UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TUBI, INC.,<br>                Plaintiff,<br>v.<br><br>KELLER POSTMAN LLC,<br>                Defendant. | Civil Action No. 1:24-cv-01616-ACR<br><br>Judge Ana C. Reyes |

**PLAINTIFF TUBI, INC.'S RESPONSE TO DEFENDANT KELLER POSTMAN LLC'S NOTICE OF INTENTION TO FILE MOTION TO DISMISS**

Tubi's Complaint cannot be dismissed because it adequately alleges tortious interference against Keller Postman. Keller filed 23,747 arbitration demands knowing its clients who were registered users had an obligation before filing to go through an informal dispute resolution process that was supposed to save the parties resources. Keller did so without its clients' informed consent, in violation of its ethical requirements and the Terms of Use ("Terms"), in a rush to file the demands, and with a desire to harm Tubi independent of its goal to help its clients' legitimate interests. This Court must take as true these allegations, which show Keller caused its clients to breach the Terms for improper purposes.

***Tubi Sufficiently Alleges a Breach by Keller's Clients.*** The Terms expressly require that before filing for arbitration, a party must send a Notice of Dispute that sets forth "the specific facts giving rise to the Dispute" and then allow for a 45-day dispute resolution process. Dkt. 1 ¶¶ 37–39. Tubi alleges that Keller caused its clients to file arbitration demands *without* providing a Notice of Dispute, *without* providing specific facts giving rise to the dispute, and *without* allowing Tubi to engage in the 45-day dispute resolution process. *Id.* ¶¶ 6, 51–70, 73–78.

Keller wrongly claims that there was no breach because Tubi and its clients are in an

arbitration proceeding before JAMS, where its clients must contest the enforceability of the provision.  Keller's argument fails for several reasons.  *First*, Tubi adequately alleges that Keller's clients breached the contract.  Keller's contention that the notice provision is unenforceable is an affirmative defense.  *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 555 (D.C. 2016); *see also Walsh v. Schlecht*, 429 U.S. 401, 408 (1977) (the law presumes contracts are enforceable).  Thus, to obtain dismissal, Keller must show "the facts that give rise to the defense are clear from the face of the complaint."  *de Csepel v. Republic of Hungary*, 714 F.3d 591, 608 (D.C. Cir. 2013).  This is impossible because Tubi alleges Keller's clients were bound by the informal dispute resolution provision.  *See* Dkt. 1 ¶¶ 2, 53, 68, 83.  Indeed, Keller does not even contend in its Notice of Intent that the provision is unenforceable.  Instead, Keller asks the Court to dismiss the Complaint on the *possibility* that Keller's clients might prevail at some point in the arbitration on its argument against the notice provision.  But if Keller cannot succeed at the Rule 12(b)(6) stage on an argument that the notice provision *is* unenforceable, it certainly is not entitled to dismissal on grounds that the notice provision *might be* found by an arbitrator to be unenforceable.  Tellingly, Keller does not even assert that a finding by an arbitrator would be binding on this Court or would estop either party from arguing about the enforceability of this provision.

*Second,* Keller's argument would mean that any party could circumvent an agreed informal dispute process by simply calling it unenforceable.  Accepting this premise would make meaningless "commonplace" dispute resolution terms that "can be both reasonable and laudable" by promoting cost and time savings.  *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023).

*Third*, Keller's characterization that its arbitration demands "challeng[e] the delay provision" is revisionist history.  Dkt. 9 at 1.  The demands seek money and injunctive relief, but do not ask for a declaration that the informal dispute resolution term is unenforceable.  While

Keller mentions the term, it does so in the paragraph after it lists the relief it seeks. Dkt. 1 Ex. 15 at 2. Keller simply did not file the demands seeking a declaration that the term is unenforceable.

***Tubi Alleges Keller's Improper Intent and Motive.*** Tubi repeatedly alleges that Keller tortiously interfered with the contracts without its clients' informed consent and against their interests. Dkt. 1 ¶¶ 16–33, 40–56. Keller ignores these allegations and argues that it cannot be liable for "advis[ing] or assist[ing] a client to make or break a contract." Dkt. 9 at 2. But Tubi alleges that Keller did not receive informed consent, and instead put its clients at risk of dismissal. Indeed, Keller was "incapable of providing individual advice" given its number of clients and the individual, rather than class, nature of the representation. Dkt. 1 ¶¶ 28, 32.

Keller admits it can be liable if it possessed "a desire to harm which is independent of the desire to protect [its] client." Dkt. 9 at 2. Keller's contention that its intent aligns with its clients' interests contradicts Tubi's allegations and cannot be the basis for dismissal. *Chin-Teh Hsu v. New Mighty U.S. Tr.*, No. 10-1743 (JEB), 2020 WL 588322, at *6 (D.D.C. Feb. 6, 2020) (intent is fact issue not suitable for pretrial resolution). Keller says its contingency fee relationship means its interests are "*dependent on,* and not independent of or in conflict with" those of its clients. Dkt. 9 at 3. Yet Tubi alleges otherwise, explaining how Keller's unilateral decision to induce breach without informed consent harmed its clients' interests, but assisted Keller in its desire to quickly settle without needing to engage in required legal work. Dkt 1 ¶¶ 30–33, 54–56. Indeed, JAMS's decision to consolidate the claims means Keller's clients did not benefit from the "leverage" the firm sought, but they took on risk without giving informed consent. Other Tubi allegations show the firm's wrongful intent, too. Even after being told that more than 40% of the claims were fraudulent, Keller refused to withdraw any, instead making 23,736 settlement demands that did not distinguish recoveries for those with Tubi accounts from those who lied and did not even have

accounts.  *Id.* ¶¶ 50, 57–64.  While such a settlement might suit some, others might prefer a different remedy, which is one reason for the notice and 45-day process.  Keller's duty is to seek relief that *each client* independently desires, not to chase a quick class action-like fee.  *Id.* ¶¶ 26–27.  But Keller chose this path and interfered with Tubi's contracts.

***Tubi Sufficiently Pleads Its Request for Declaratory Relief.***  Keller does not dispute that Tubi has standing to obtain a declaration that Keller tortiously interfered with its clients' contracts with Tubi.  Tubi's other declaratory requests flow from such a finding, since it would mean that Keller caused its clients to breach the Terms, failed to provide specific facts underlying the disputes, and acted with a desire to harm that was independent of its desire to protect its clients.

Keller's argument that the Federal Arbitration Act precludes Tubi's request fails because Keller is not a party to an arbitration agreement with Tubi.[1]  Keller's contention that Tubi has no standing to disqualify Keller on ethical grounds is wrong because Tubi seeks a declaration that Keller has failed to vet its claims and has exploited its clients to harm *Tubi* in violation of its ethical duties.[2]  *See Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1366–67 (D.C. Cir. 2023) (court has broad discretion to fashion declaratory relief).

Keller provides no basis for dismissal, let alone with prejudice.  Keller claims Tubi cannot show that Keller was motivated by its own independent interests, but Tubi has alleged exactly that.  And even if it had not, courts "normally will give plaintiff leave to file an amended complaint" before dismissing with prejudice.  *O'Donnell v. Barry*, 148 F.3d 1126, 1137 n.3 (D.C. Cir. 1998).  Keller cannot so easily dodge accountability for its abusive conduct.

---

[1] The parties in *Tannatt v. Varonis Systems, Inc.* had an arbitration agreement.  No. CV 18-12589-JGD, 2019 WL 830482, at *1 (D. Mass. Feb. 21, 2019).

[2] These ethical duties run to Tubi and the arbitral forum.  *See* D.C. R. PRO. CONDUCT 3.1 (duty to tribunal), 3.4 (fairness to opposing party).

| | |
|---|---|
| DATED: August 7, 2024 | JENNER & BLOCK LLP |
| | By: /s/ *Brandon D. Fox* |

    Brandon D. Fox (*pro hac vice*)
    bfox@jenner.com
    Kelly M. Morrison (D.C. Bar No. 1046293)
    kmorrison@jenner.com
    Sati Harutyunyan (D.C. Bar No. 1049009)
    sharutyunyan@jenner.com
    515 South Flower Street, Suite 3300
    Los Angeles, CA 90071-2246
    Telephone: (213) 239-5100
    Facsimile: (213) 239-5199

*Attorneys for Plaintiff Tubi, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 7th day of August 2024, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: /s/ *Brandon D. Fox*
Brandon D. Fox
