**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TUBI, INC.,
      Plaintiff,

v.

Case No. 1:24-cv-01616-ACR

KELLER POSTMAN LLC,
      Defendant.

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**KELLER POSTMAN LLC'S MOTION TO DISMISS**
**COMPLAINT OR, IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION**

KELLER POSTMAN LLC
  Warren D. Postman (Bar ID 995083)
  Albert Y. Pak (Bar ID 888314242)
  Fred Messner (*pro hac vice* pending)
1101 Connecticut Avenue N.W.
Suite 1100
Washington, DC 20036
(202) 918-1123
wdp@kellerpostman.com
albert.pak@kellerpostman.com
fred.messner@kellerpostman.com

  Kiran N. Bhat (Bar ID 1021898)
2333 Ponce De Leon Boulevard
Suite R-240
Coral Gables, FL 33134
(305) 845-4684
kiran.bhat@kellerpostman.com

*Attorneys for Defendant*

Dated:  October 30, 2024

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INDEX OF EXHIBITS ....................................................................................................... vi

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 3

    I.   Tubi's tortious interference claim should be dismissed.......................................3

        A.   Tubi cannot allege breach because Claimants were entitled to commence arbitration under the Terms' delegation clause. ......................................... 3

        B.   Tubi has not pleaded any harm flowing from the purported breach. ........................ 8

        C.   Tubi has not pleaded facts plausibly showing that KP's legal advice triggered the narrow exception to the attorney litigation privilege. ...................................... 10

            1.   Tubi cannot state a claim without pleading how KP acted with an interest independent of its clients for its sole personal benefit. .................................... 10

            2.   Tubi has not alleged that KP acted with an interest independent of its clients for its sole personal benefit. .................................................................. 14

            3.   Tubi's fallback procedural arguments are unpersuasive. ................................. 18

    II.   Tubi's attempts to avoid arbitration through declaratory relief should be dismissed......19

    III.   Alternatively, the FAA requires the Court to stay this case pending resolution of issues referable to arbitration under the Terms............................................................21

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Postmates*,
    414 F. Supp. 3d 1246 (N.D. Cal. 2019) ...................................................................22

*Al-Tamimi v. Adelson*,
    916 F.3d 1 (D.C. Cir. 2019) ....................................................................................24

*Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*,
    No. 2:23-CV-07676, 2023 WL 8845213 (C.D. Cal. Dec. 19, 2023) .........................6

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009) ...........................................................................19, 21, 22, 23, 24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................3, 10, 13, 17, 18

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ..................................................................................................8

*BDO USA, LLP v. Jia-Sobota*,
    283 A.3d 699 (D.C. 2022) ........................................................................................6

*Bell Atl. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................18

*Bielski v. Coinbase, Inc.*,
    87 F.4th 1003 (9th Cir. 2023) ..................................................................................6

*Bombardier Corp. v. Nat'l R.R. Passenger Corp.*,
    333 F.3d 250 (D.C. Cir. 2003) ................................................................................22

*Casco Marina Dev., L.L.C. v. D.C. Redevelopment Land Agency*,
    834 A.2d 77 (D.C. 2003) ..........................................................................................6

*In re Centurylink Sales Pracs. & Sec. Litig.*,
    No. 0:17-CV-02832, 2020 WL 3513547 (D. Minn. June 29, 2020) ........................17

*Close It! Title Servs., Inc. v. Nadel*,
    248 A.3d 132 (D.C. 2021) .......................................................................................11

*CPB Contractors Pty Ltd. v. Chevron Corp.*,
    No. 4:16-CV-05344, 2017 WL 7310776 (N.D. Cal. Jan. 17, 2017) ...................23, 24

*Davenport v. Nvidia Corp.*,
  No. 5:23-CV-01877, 2024 WL 832387 (N.D. Cal. Feb. 28, 2024) ...........................................6

*DSMC Inc. v. Convera Corp.*,
  349 F.3d 679 (D.C. Cir. 2003), *abrogated by Arthur Andersen v. Carlisle*, 556
  U.S. 556 U.S. 624 (2009)...........................................................................................................22

*Durruthy v. Charter Commc'ns, LLC*,
  No. 3:20-CV-01374, 2020 WL 6871048 (S.D. Cal. Nov. 23, 2020)..........................................6

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002)....................................................................................................................19

*Fairman v. District of Columbia*,
  934 A.2d 438 (D.C. 2007) ....................................................................................................22, 23

*Fischer v. Estate of Flax*,
  816 A.2d 1 (D.C. 2003) ..............................................................................................................12

*Flavell v. Collier*,
  No. 1:20-CV-0959, 2021 WL 3856615 (D.D.C. Aug. 30, 2021) .................................................6

*Fraidin v. Weitzman*,
  611 A.2d 1046 (Md. Ct. Spec. App. 1992) ................................................................................11

*Genencor Int'l, Inc. v. Novo Nordisk A/S*,
  766 A.2d 8 (Del. 2000) ...............................................................................................................22

*Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper, Chartered*,
  935 A.2d 362 (D.C. 2007) ...................................................................................2, 10, 11, 14

*Heckman v. Live Nation Ent., Inc.*,
  ___ F.4th ___, 2024 WL 4586971 (9th Cir. Oct. 28, 2024) .....................................................7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019)..................................................................................................................1, 8

*Hill v. GE Power Sys., Inc.*,
  282 F.3d 343 (5th Cir. 2002) ................................................................................................23, 24

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
  581 U.S. 246 (2017)....................................................................................................................13

*Koire v. Metro Car Wash*,
  40 Cal. 3d 24 (1985) .............................................................................................................15, 16

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004)....................................................................................................................20

*Kumar v. Ramsey*,
    71 Cal. App. 5th 1110 (2021) ............................................................................15

*Lannan Found. v. Gingold*,
    300 F. Supp. 3d 1 (D.D.C. 2017) .....................................................................11

*\*Liapes v. Facebook, Inc.*,
    95 Cal. App. 5th 910 (2023), *review denied* (Jan. 10, 2024) ..........................15

*Marx v. Gen. Rev. Corp.*,
    568 U.S. 371 (2013) ...........................................................................................9

*McGlynn v. California*,
    21 Cal. App. 5th 548 (2018) ............................................................................22

*Metro. Wash. Chapter, Associated Builders & Contractors, Inc. v. District of*
    *Columbia*,
    62 F.4th 567 (D.C. Cir. 2023) ..........................................................................21

*Morowitz v. Marvel*,
    423 A.2d 196 (D.C. 1980) ...............................................................................12

*Munson v. Del Taco, Inc.*,
    46 Cal. 4th 661 (2009) .....................................................................................15

*\*Murray v. Wells Fargo Home Mortg.*,
    953 A.2d 308 (D.C. 2008) ...........................................................................6, 10

*\*Nave v. Newman*,
    140 A.3d 450 (D.C. 2016) ..........................................................................11, 18

*NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc.*,
    957 A.2d 890 (D.C. 2008) .................................................................................6

*Patrick v. Running Warehouse, LLC*,
    93 F.4th 468 (9th Cir. 2024) ..............................................................................5

*Powers v. Ohio*,
    499 U.S. 400 (1991)..........................................................................................20

*Randolph v. RRR Bowie, LLC*,
    No. 8:22-CV-02150, 2023 WL 7110516 (D. Md. Oct. 27, 2023) .......................6

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)..............................................................................................5

*Robert Half Int'l Inc. v. Billingham*,
    317 F. Supp. 3d 379 (D.D.C. 2018) ...................................................................6

*Rosenthal v. Sonnenschein Nath & Rosenthal, LLP*,
     985 A.2d 443 (D.C. 2009) ............................................................................................. 9

*RSM Prod. v. Freshfields Bruckhaus Deringer U.S. LLP*,
     682 F.3d 1043 (D.C. Cir. 2012) .................................................................................... 18

*Sessions v. Morales-Santana*,
     582 U.S. 47 (2017) ........................................................................................................ 20

*Shalala v. Ill. Council on Long Term Care, Inc.*,
     529 U.S. 1 (2000) .......................................................................................................... 24

*\*Shenandoah Assocs. Ltd. v. Tirana*,
     322 F. Supp. 2d 6 (D.D.C. 2004) ................................................................................. 12

*Smith v. Scalia*,
     44 F. Supp. 3d 28 (D.D.C. 2014) ................................................................................. 18

*Smith v. Spizzirri*,
     601 U.S. 472 (2024) ........................................................................................... 21, 23, 24

*Smith-Haynie v. District of Columbia*,
     155 F.3d 575 (D.C. Cir. 1998) ..................................................................................... 19

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
     542 F.3d 354 (2d Cir. 2008) ......................................................................................... 23

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
     559 U.S. 662 (2010) ........................................................................................................ 9

*Taft v. Henley Enters., Inc.*,
     No. 8:15-CV-01658, 2016 WL 9448485 (C.D. Cal. Mar. 2, 2016) ................................ 6

*Warth v. Seldin*,
     422 U.S. 490 (1975) ...................................................................................................... 20

*Williams v. Martinez*,
     586 F.3d 995 (D.C. Cir. 2009) ..................................................................................... 11

*Wilton v. Seven Falls Co.*,
     515 U.S. 277 (1995) ...................................................................................................... 19

**Statutes**

*\*9 U.S.C. § 3 .......................................................................................................................... 3, 21

28 U.S.C. § 2201(a) ................................................................................................................ 19

Cal. Civ. Proc. Code § 1281.97 ............................................................................................... 9

## INDEX OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | Theodore Cheng, *Sometimes Less is More (and Vice Versa): A Primer on Pleading Practices in Arbitration,* 23 NYLitigator, Spring 2018 |
| 2 | W. Postman Letter to B. Fox (May 28, 2024) |
| 3 | Memorandum in Support of Jenner & Block LLP's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim, *Arwa & Change Advocates, LLP v. Jenner & Block LLP*, No. 1:24-CV-06620, Dkt. 19 (N.D. Ill. Sept. 19, 2024) |

## INTRODUCTION

Tubi's Complaint does not plausibly allege a breach of contract because the delegation clause in the Terms required Claimants to bring their challenge to Section 10(7), the delay provision, in arbitration. Tubi's Complaint does not allege any damages flowing from the purported breach because Tubi concedes it was not interested in settling Claimants' claims based on the demands as filed. And Tubi's Complaint does not state a claim that overcomes the attorney litigation privilege because, stripped of its conclusory recitation of legal labels, the Complaint does not allege any interest that Keller Postman ("KP") pursued for its sole personal benefit independent of its clients' interests. Tubi's attempts to avoid these dispositive flaws all fail.

In attempting to show a breach, Tubi's opposition reflects a basic misunderstanding about the nature of a delegation clause. Tubi argues Claimants' challenge to the delay provision was an "affirmative defense" that Tubi was not required to "anticipate" or "affirmatively plead facts" to avoid. (Dkt. 18 at 15). That is false. To plausibly allege breach, Tubi must plead facts showing that by filing arbitration demands challenging the delay provision, Claimants violated the Terms. But on its face, the delegation clause *required* Claimants to bring their challenge to the delay provision's validity by filing arbitration demands. It necessarily follows that filing them was not a breach. Tubi's failure to "anticipate" this straightforward reading of the Terms has nothing to do with Rule 8's pleading standard. It speaks instead to why Tubi's tort theory is defective as a matter of law. For years, corporations have argued successfully that aggrieved consumers subject to delegation clauses *must* commence arbitration when they disagree that their disputes should be resolved in arbitration. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). Claimants were similarly bound to arbitrate whether they had to suffer pointless delay before arbitrating. Tubi cannot plead any facts that convert compliance with a clear delegation clause into a viable theory of breach.

Tubi's attempt to identify an injury also runs from the delegation clause. Conceding that it was unwilling to resolve or even discuss resolution of Claimants' claims based on the information in the demands, Tubi shifts to arguing that Claimants failed to provide information consistent with *Tubi's view* of what Section 10(7) requires. (Dkt. 18 at 19-22). The delegation clause, however, gave each Claimant the express right and obligation to challenge Tubi's view of what was required to start an arbitration *by initiating an arbitration*. That is what Claimants did. Tubi is free to argue *in arbitration* that Claimants had to supply more information. But, given the delegation clause, Tubi's position could not have prevented Claimants from filing their demands. And to the extent Tubi truly believes that JAMS lacked jurisdiction, Tubi could have chosen without consequence to refuse to pay *any* JAMS fees. Instead, Tubi paid the $2,000 JAMS invoice, (Dkt. 1 ¶ 68); (Dkt. 14-7), presumably because it knew the delegation clause bound it to arbitrate threshold disputes. Tubi thus cannot credibly claim that payment as damages flowing from breach.

Finally, in attempting to overcome the attorney litigation privilege, Tubi tries to water down the governing standard. But Tubi's position ignores controlling precedent, which holds that a tortious interference claim against opposing counsel can survive *only* where the lawyer pursued an interest independent of the client and "for the attorney's *sole* personal benefit." *Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper, Chartered*, 935 A.2d 362, 381 (D.C. 2007) (emphasis added). Tubi runs from this governing standard because it cannot satisfy it. Tubi's own Complaint states that KP induced the purported breach to pressure Tubi into settling *with KP's clients.* (Dkt. 1 ¶¶ 1, 3, 5, 25, 31, 57-58, 62-63, 68). That motive is obviously to advance KP's clients' interests. Ignoring the law, Tubi trots out an array of baseless and irrelevant smears:

- Tubi asserts that KP filed frivolous claims. That allegation is itself frivolous. But even if it were accepted as true, Tubi has no plausible explanation for how filing even frivolous claims could ever benefit KP independent from the firm's clients.

- Tubi conjectures "[o]n information and belief" that KP has failed to obtain "informed consent" for the filing of Claimants' demands. (Dkt. 1 ¶ 3). Once more, Tubi cannot show how filing a client's demand without informed consent would solely benefit KP rather than also benefitting the client. And since Tubi has no basis for describing KP's communications with its clients, its "[t]hreadbare recital" that KP lacked informed consent must be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

- Tubi speculates that KP acted to lever a quick settlement for its clients without obtaining consent to conflicts "between clients arising from being differently situated" from one another. (Dkt. 18 at 26). Tubi has no basis to know what conflict disclosures and waivers KP has obtained from its clients, so this threadbare recital must be disregarded as well. Regardless, Tubi has no explanation for how this conduct could solely benefit KP.

Tubi's approach to the attorney litigation privilege would obliterate it. On Tubi's view, a plaintiff could state a claim merely by (1) alleging that opposing counsel in some other litigation recommended a strategy that lacked merit; (2) reciting with no basis in personal knowledge that the lawyer did not get informed consent or proper conflict waivers; and (3) claiming that the lawyer would benefit from the strategy (*e.g.*, by receiving hourly compensation) while her client would not. The plaintiff would then, according to Tubi, be entitled to discovery into privileged communications bearing on the separate dispute. The law does not countenance that approach.

If the Court is not prepared to dismiss the Complaint, the plain language of the FAA requires a stay pending the arbitrations between Claimants and Tubi. 9 U.S.C. § 3. Courts have interpreted the plain language of Section 3 to grant stays in similar contexts and equitable estoppel bars Tubi from promising arbitration to Claimants but then turning around and suing their lawyers to obtain preemptive adjudication of arbitrable issues in a collateral judicial proceeding.

**ARGUMENT**

**I.    Tubi's tortious interference claim should be dismissed.**

**A.    Tubi cannot allege breach because Claimants were entitled to commence arbitration under the Terms' delegation clause.**

Tubi's Complaint alleges that KP caused Claimants to breach the Terms in only one way: by filing arbitration demands without first giving Tubi 45 days' advance notice under

Section 10(7).  (Dkt. 1 ¶ 52).  But Claimants' demands expressly stated that Claimants were disputing the enforceability of this provision.  (*Id.*, Ex. 15 at 208).  And the Terms contain a delegation clause, which required Claimants and Tubi to resolve threshold disputes about arbitration in arbitration.  (*Id.*, Ex. 8 at 129-30 (§§ 10(2), 10(6) (incorporating JAMS Rules))); (Dkt. 14-3 at 11 (JAMS Rule 8(b))).  As a matter of law, Claimants were entitled and required to commence arbitration as they did.  Any contrary holding would be tantamount to saying that Claimants cannot challenge the delay provision as unconscionable in any forum:  filing in court would violate the delegation clause, and, in Tubi's view, filing demands for arbitration to adjudicate the validity of the delay provision itself violated the delay provision.  Tubi cannot overtly advocate for that Catch-22, so it instead turns to a string of increasingly fallacious arguments.

First, Tubi bizarrely attempts to deny that Claimants challenged the delay provision in their demands.  (Dkt. 18 at 13-14 (claiming this was "revisionist history")).  But the demands expressly state that Section 10(7)

> is illusory, unconscionable, and therefore unenforceable.  It requires Claimant to give Tubi written notice of a dispute and to wait for 45 days before initiating an arbitration against Tubi, but it imposes no obligation on Tubi to do anything during that 45-day wait period.  Tubi "may try to reach a settlement" during that time, but need not do so.  This 45-day wait period therefore serves no purpose other than delay.

(Dkt. 1, Ex. 15 at 208).  Claimants' position, and their request that the arbitrator reach the merits without delay, was crystal clear.  And, contrary to Tubi's suggestion, the Terms do not require a challenge to the validity of an arbitration provision to include a request for declaratory relief.  *See generally* (*Id.*, Ex. 8 at 129-31).  The applicable JAMS Rules in fact allow informal pleading that is less rigid than in court.  (Dkt. 14-3 at 10 (JAMS Rules 7(a) (requiring "Notice of Claims" to include a "short statement of its factual basis"))); *see also* Ex. 1, Theodore Cheng, *Sometimes Less*

*is More (and Vice Versa):  A Primer on Pleading Practices in Arbitration*, 23 NYLitigator, Spring 2018 at 28 ("[T]he 'notice pleading' required in an arbitration proceeding is far more perfunctory than in court, thereby making it rather easy to commence an arbitration.").

Next, Tubi falsely claims that Claimants "concede" breach and that Claimants' challenge to the delay provision is an "affirmative defense" that Tubi was not required to "anticipate" or "affirmatively plead facts" to avoid.  (Dkt. 18 at 14-15).  This argument reflects a basic confusion about how delegation clauses work.  "[A] delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement."  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010).  By its very operation, a delegation clause gives a party the right to force a counterparty to arbitrate even where the counterparty does not think it should have to.  *See, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480-81 (9th Cir. 2024) (permitting corporate defendant to enforce delegation clause contained within incorporated JAMS rules over consumer plaintiffs' objections that they were unsophisticated).

The operation of delegation clauses is so familiar that it barely warrants comment in cases in which a defendant forces a plaintiff to submit threshold issues to arbitration over the plaintiff's objection.  And Tubi plainly made a tactical choice to include a broad delegation clause in its Terms so that it could force plaintiffs who did not think they should have to arbitrate to submit to arbitration.  Tubi's sudden amnesia about how delegation clauses work does not change the law.  It is Tubi's obligation, not KP's, to plead facts showing that Claimants breached the Terms.  The Complaint cannot simply ignore the contractual text authorizing and requiring Claimants to file demands challenging the delay provision by recharacterizing that contractually compliant behavior as an affirmative defense.  (Dkt. 18 at 14-15).  Nor can Tubi point to the "strongly fact-dependent inquiry" involved in assessing unconscionability to avoid dismissal.  (*Id*. at 15).  The threshold

question of *whether* Claimants were entitled to arbitrate that fact-dependent inquiry is not fact-dependent at all.[1]  As a matter of law, Claimants were well within their rights under the Terms to force Tubi to arbitrate their claim that Tubi's delay provision is unenforceable.[2]

Tubi attempts to excuse its failure to allege a breach by claiming it need only plead "failure of performance" rather than "breach."  (*Id.* at 15-16).  But the case on which Tubi relies, *Casco*, 834 A.2d at 84, was decided in 2003, and the D.C. Court of Appeals later held that in cases alleging tortious interference, "'a breach of contract is an essential element' of the tort."  *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 326 (D.C. 2008) (citation omitted); *see also Flavell v. Collier*, No. 1:20-CV-0959, 2021 WL 3856615, at *7 (D.D.C. Aug. 30, 2021) (applying *Murray* for the

---

[1] Tubi's refusal to recognize that the delegation clause required Claimants to file their arbitrations as they did makes its cited authorities irrelevant.  None of the cases Tubi cites for the proposition that challenging Section 10(7) was an "affirmative defense" involved a delegation clause, and most did not involve arbitration at all.  *See NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc.*, 957 A.2d 890, 900 (D.C. 2008) (no arbitration agreement at all); *Robert Half Int'l Inc. v. Billingham*, 317 F. Supp. 3d 379, 383 (D.D.C. 2018) (same); *Casco Marina Dev., L.L.C. v. D.C. Redevelopment Land Agency*, 834 A.2d 77, 78 (D.C. 2003) (same); *BDO USA, LLP v. Jia-Sobota*, 283 A.3d 699, 701 (D.C. 2022) (instead of a delegation clause, arbitration agreement expressly allowed either party "to 'seek provisional remedies' in court").

[2] Tubi claims that KP should have done more to address *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023).  But KP did not address *Bielski* because it is facially inapposite.  Tubi does not dispute that the delegation clause in the Terms is enforceable—and *Bielski* confirmed that an enforceable delegation clause requires disputes over arbitrability to be arbitrated.  *Id.* at 1015.  Although the notice provision at issue in *Bielski* was enforceable, it did not have the unilateral operation that renders the pre-filing notice requirement in this case unenforceable.  *Id.* at 1014 (describing that both parties had substantive obligations under notice provision).  Tubi's district court cases are inapposite for similar reasons.  *See Davenport v. Nvidia Corp.*, No. 5:23-CV-01877, 2024 WL 832387, at *1 (N.D. Cal. Feb. 28, 2024) (no one-sided delay provision); *Taft v. Henley Enters., Inc.*, No. 8:15-CV-01658, 2016 WL 9448485, at *8 (C.D. Cal. Mar. 2, 2016) (same); *Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*, No. 2:23-CV-07676, 2023 WL 8845213, at *3 (C.D. Cal. Dec. 19, 2023) (rejecting argument that consultation requirement *displaced* arbitration provision); *Randolph v. RRR Bowie, LLC*, No. 8:22-CV-02150, 2023 WL 7110516, at *5 (D. Md. Oct. 27, 2023) (dismissing claims where plaintiff failed to arbitrate at all and instead tried to collaterally attack entire arbitration agreement as unconscionable after filing suit).  One case even supports KP's position, *see infra* note 5, that the Terms did not require Claimants to provide facts coextensive with Tubi's wishes.  *See Durruthy v. Charter Commc'ns, LLC*, No. 3:20-CV-01374, 2020 WL 6871048, at *12 (S.D. Cal. Nov. 23, 2020) (approving requirement that an employee provide the "nature and basis of the claim or dispute" "at apparently whatever level of detail the employee chooses").

proposition that a breach is "essential"). Regardless, this is a semantic distinction without a substantive difference. Tubi grounds its suit in Claimants' challenge to Section 10(7) of the Terms. Whether Tubi now characterizes this as "breach" or "failure of performance," the Complaint reveals that KP's clients *performed* under the delegation clause by bringing the challenge.

Tubi asks the Court to disregard Claimants' right to invoke the delegation clause because, otherwise, "[a]ny party could bypass pre-filing" requirements "simply by asserting that the factfinder must resolve challenges to the provision." (Dkt. 18 at 16). But that is false twice over. On Tubi's own telling, the delay provision is designed to force the parties to have an opportunity to resolve an underlying dispute before an arbitrator considers the merits. That opportunity has not been bypassed. Tubi remains free to argue its position and, if the arbitrator agrees, she can order Claimants to comply with the delay provision without considering the underlying merits, just as Tubi supposedly intended. But *some* decisionmaker must first decide Claimants' threshold argument that the delay provision is invalid. The identity of the decisionmaker was Tubi's choice. Tubi could easily revise its Terms to empower courts to decide threshold issues—it did exactly that when it chose to update its consumer agreement in response to Claimants' demands. (Dkt. 1, Ex. 9 at 175 (§ 11.h) (requiring court to decide the enforceability and compliance with § 11.b, the new notice provision)).

Finally, Tubi argues that Claimants' challenge to the enforceability of the delay provision is meritless. Many precedents say otherwise.[3] But this disagreement is neither here nor there. Delegation clauses require arbitration of threshold issues even where one party's position on a

---

[3] Just two days ago, the Ninth Circuit Court of Appeals ruled in KP's clients' favor on such an argument. *See Heckman v. Live Nation Ent., Inc.*, ___ F.4th ___, 2024 WL 4586971, at *10 (9th Cir. Oct. 28, 2024). The agreement in *Heckman* contained a facially mutual right to appeal grants, but not denials, of injunctive relief, but the court concluded that the provision was unconscionable because "only plaintiffs are likely to pursue injunctive relief, [so] the right to appeal an award of injunctive relief . . . is functionally reserved for Defendants." *Id*.

"threshold issue of arbitrability" "appears to the court to be frivolous.'" *Henry Schein*, 586 U.S. at 68-69 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649–50 (1986)). Tubi's complaint that the demands provide insufficient detail about the specifics of Claimants' claims (Dkt. 18 at 13 n.8)—the equivalent of arguing to the Court that Claimants failed to meet the arbitral pleading standard—is reserved to the arbitrator for the same reason. *Henry Schein*, 586 U.S. at 68-69 (noting that "[a] court has 'no business weighing the merits of the grievance'" where there is a delegation clause (quoting *AT&T Techs.*, 475 U.S. at 650)).

Delegation clauses are strong medicine. They allow one party to compel a counterparty to arbitrate even when the counterparty does not think the conditions for arbitration have been met. Plaintiffs have experienced the business end of delegation clauses for years. And Tubi no doubt imposed the broad delegation clause in the Terms hoping to wield it as a sword against class actions. The law has not changed simply because Tubi now finds that clause inconvenient.

## B.    Tubi has not pleaded any harm flowing from the purported breach.

Tubi agrees that it was not willing to engage in settlement discussions based on the information Claimants provided in their demands. (Dkt. 18 at 19-22).[4] It necessarily follows that providing this same information 45 days earlier would not have changed the outcome. The Complaint thus fails to allege damages from the purported breach.

Tubi's response is a non-sequitur. It argues that, if Claimants had to provide the information *it thinks* Section 10(7) requires, the requisite level of detail would have rendered some or all Claimants unable to file demands. (Dkt. 18 at 21-22). That argument again ignores the delegation clause. Tubi's position on the inadequacy of Claimants' demands was no bar to

---

[4] Tubi even refused a mutual exchange of information proposed by KP. KP offered to provide information about each Claimant, but asked that the exchange be bilateral. *See* Ex. 2, W. Postman Letter to B. Fox (May 28, 2024). Tubi refused, instead preferring to file the Complaint days later.

commencing arbitrations. Tubi is free to argue *to an arbitrator* that the demands were inadequate.[5]

But Tubi cannot convert a delegated disagreement over the arbitral pleading standard into a tort.

Indeed, Tubi's own conduct confirms Claimants' reading of the Terms. Tubi paid the

$2,000 required to initiate the pending arbitrations. (Dkt. 1 ¶ 68); (Dkt. 14-7). But why did Tubi

do so? "[A]rbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds*

*Int'l Corp.*, 559 U.S. 662, 681 (2010) (citation omitted). If Tubi did not believe it was *required* to

arbitrate the Claimants' threshold issues, it could have simply ignored the JAMS invoice. That

would have required Claimants to file a motion to compel arbitration, which would have been

*denied* if Tubi was right that it was not required to arbitrate at least the threshold issue of the delay

provision's validity. In that scenario, Tubi would not have to pay any JAMS fees.[6]

But Tubi did pay the JAMS fees. It did so because it knew that the delegation clause in the

Terms obligated it to arbitrate threshold disputes with Claimants. Indeed, under California law,

failing to pay the JAMS fees the Terms required would have been *sanctionable*. *See* Cal. Civ.

Proc. Code § 1281.97 (permitting consumer to seek sanctions if the drafter of an arbitration clause

---

[5] While Tubi's claim that more information was required is not legally relevant to this motion, it is also facially incorrect. Section 10(7) requires a notice of dispute to provide "the name, address, and contact information of the party giving notice, the specific facts giving rise to the Dispute, the Tubi Service to which the Notice relates, and the relief requested." (Dkt. 1, Ex. 8 at 130 (§ 10(7))). The demands provided Claimants' names, addresses, and contact information; the Tubi website and mobile application services to which the disputes pertained; and a description of Tubi's conduct that violated the Unruh Act. (Dkt. 1, Ex. 15 at 208-09). Tubi knew how to require more but chose not to. In fact, Tubi issued a new consumer contract in response to Claimants' demands that purports to require more: a calculation of damages, a personal verification, and an "individualize[d]" notice unrelated to any other "person's Dispute." (Dkt. 1, Ex. 9 at 170-71).

[6] Nor are Tubi's attorney's fees recoverable. (Dkt. 18 at 20-21). "Under the bedrock principle known as the American Rule, each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 382 (2013) (cleaned up) (citations omitted). To prevent the "exception for wrongful involvement in litigation from swallowing the American Rule," courts construe the exception's elements narrowly and have been hesitant to apply it. *See, e.g.*, *Rosenthal v. Sonnenschein Nath & Rosenthal, LLP*, 985 A.2d 443, 458-60 (D.C. 2009) (declining to apply exception and describing forum where underlying dispute took place as "well suited to consider the *bona fides*" of the underlying action).

refuses to pay fees owed before an arbitration can proceed).  A payment required by law is not "damages" of any sort.  And if Tubi really believed that the purported breach excused it from arbitration as it initially told JAMS, (Dkt. 1, Ex. 16 at 218 ("Tubi disputes that JAMS has jurisdiction because the purported claimants breached")), then Tubi chose to pay the JAMS fees as a matter of grace.  Either way, Tubi's payment of fees were not "damages resulting from the [alleged] breach."  *Murray*, 953 A.2d at 325 (citation omitted).

> **C.    Tubi has not pleaded facts plausibly showing that KP's legal advice triggered the narrow exception to the attorney litigation privilege.**

Tubi's opposition next attempts to rely on a grab bag of conclusory and unfounded allegations in the hopes of distracting the Court from the governing law.  Given this strategy, it is important to "tak[e] note of the elements a plaintiff must plead to state a claim."  *Iqbal*, 556 U.S. at 675.  From there, the Court must disregard conclusory recitation of the legal elements, even where the plaintiff characterizes that recitation as "factual."  *Id.* at 678.  Finally, where (as here), there is a lawful explanation for the defendant's conduct, the Court should draw on its "judicial experience and common sense" to assess whether the well-pleaded facts allow "the court to infer more than the mere possibility of misconduct."  *Id.* at 678-79.

> **1.    Tubi cannot state a claim without pleading how KP acted with an interest independent of its clients for its sole personal benefit.**

An attorney's legal advice is generally privileged from tort liability.  *See Goldschmidt*, 935 A.2d at 381.  There is a narrow exception to this privilege where the plaintiff establishes that the attorney pursued an interest independent of the client "for the attorney's sole personal benefit."  *Id*.  Tubi tries to water down the standard by asserting that it only needs to establish one of a range of vague adjectives:  "malice," "spite," or "improper means."  (Dkt. 18 at 22-23).  Tubi's position misstates the clear legal test set out in case law and would frustrate the purpose behind that test.

In *Goldschmidt*, the D.C. Court of Appeals[7] rejected a plaintiff's attempt to establish tortious interference against an adversary's lawyer, holding that, to avoid the attorney litigation privilege, the plaintiff must show that the attorney "possess[es] a desire to harm *which is independent of the desire to protect his client*." 935 A.2d at 381 (alteration in original) (emphasis added) (quoting *Fraidin v. Weitzman*, 611 A.2d 1046, 1080 (Md. Ct. Spec. App. 1992)). The Court further made clear that this is the *exclusive* exception to the privilege and "there can be no [liability] when an attorney acts within the scope of his employment . . . [that is,] where an attorney's advice or advocacy is for the benefit of his client and not for the attorney's *sole* personal benefit." *Id.* (omission and second alteration in original) (emphasis added) (quoting *Fraidin*, 611 A.2d at 1079-80).

Tubi irrelevantly notes that some cases on the attorney litigation privilege were decided at summary judgment, (Dkt. 18 at 23), but the *legal standard* for tortious interference does not change based on the stage of the case. Accepting Tubi's well-pleaded allegations, the Complaint does not allege any facts plausibly showing that KP acted for an interest independent of its clients and for its sole personal benefit. That is the beginning and the end of the legal inquiry.[8]

*Goldschmidt* is hardly alone in describing the narrow exception to the privilege as arising only when the attorney pursues an interest independent of the client's and for her "sole personal benefit." *See Nave v. Newman*, 140 A.3d 450, 456 (D.C. 2016) (applying *Goldschmidt* "sole

---

[7] Tubi does not dispute that D.C. law governs its tortious interference claim. (Dkt. 18 at 12). "[O]n questions of District of Columbia law this court defers to the D.C. Court of Appeals." *Williams v. Martinez*, 586 F.3d 995, 1001 (D.C. Cir. 2009).

[8] Tubi relies on a *Goldschmidt* footnote *rejecting* broader exceptions to the attorney litigation privilege. (Dkt. 18 at 22-23 (citing 935 A.2d at 381 n.14)). Tubi also cites cases where courts allowed tortious interference claims against lawyers to proceed (*id.* at 30), but the courts in those cases had no occasion to address the *Goldschmidt* standard at all. *See Close It! Title Servs., Inc. v. Nadel*, 248 A.3d 132, 142 (D.C. 2021) (no invocation of attorney litigation privilege); *Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 28–29 (D.D.C. 2017) (same).

personal benefit" test); *Shenandoah Assocs. Ltd. v. Tirana*, 322 F. Supp. 2d 6, 10-11 (D.D.C. 2004) (rejecting claim that an attorney could be liable because he had an "independent" interest in making money because "it is immaterial that the lawyer hopes the action will increase the lawyer's fees or reputation as a lawyer or takes satisfaction on the consequences to a nonclient." (citation omitted)); *Fischer v. Estate of Flax*, 816 A.2d 1, 6 (D.C. 2003) (applying privilege because even "assuming evidence of self-interest and thus 'malpractice' by [the attorney] in relation to [her client]," her client's opponent "is not in a position to assert" a claim); *Morowitz v. Marvel*, 423 A.2d 196, 199–200 (D.C. 1980) (applying privilege in case involving alleged "negligence" in representation of an adversary).

The governing law announces a bright-line test for good reason. Green-lighting lawsuits by parties against opposing counsel creates systemic risk to the adversarial system. It would chill zealous advocacy and prevent lawyers from giving the full and frank legal advice to which clients are entitled. The path available for such suits is appropriately narrow. Allowing them to proceed under malleable standards like "bad faith" or "malice" is a recipe for mischief. For litigation advantage, parties routinely accuse opposing counsel of advancing meritless claims. Moreover, although KP operates on contingency, lawyers (such as Tubi's) often receive hourly fees, win or lose. Given these features of civil litigation, it would be trivially easy under Tubi's approach for a litigant to sue opposing counsel for tactical purposes. Any party could trigger an exception to the privilege by alleging that opposing counsel gave bad advice, that this advice harmed the party raising the allegations, and that the lawyer hoped to profit from that advice even though her client would lose. If that is the test, the attorney litigation privilege is no privilege at all.[9]

---

[9] Tubi cannot justify its standard by arguing that an attorney faced with such a lawsuit should simply suffer the lawsuit to proceed and prove his innocence at trial. As with qualified immunity, the litigation privilege can only accomplish its purpose if it provides protection from the lawsuit

Tubi claims that adopting its approach "would not be calling into doubt the tactics of other members of the plaintiff's bar or creating case law that would subject lawyers to civil suits when acting ethically in the ordinary course." (Dkt. 18 at 31). But the caveats built into that statement make it a non-denial. Any litigant seeking tactical leverage could dispute that her adversary was "acting ethically" or "in the ordinary course" simply by following Tubi's conclusory approach here. (*Id.*)[10] *Goldschmidt* rejects such an easy workaround.

Finally, it is worth noting that Tubi appears to be operating on the ironic premise that arbitration is an inferior forum. If KP had counseled its clients to file their claims in court, it is hard to believe that Tubi would have sued KP in a collateral proceeding for tortious interference with contract. Yet Tubi could just as easily repeat its allegations that KP counseled its clients to breach the contract, that it did so to create settlement leverage, and (without basis) that KP failed to properly inform and obtain conflict waivers from its clients. But D.C. law clearly would not countenance that suit, and the proper remedy for Tubi's concerns would be to defend against the lawsuit and—to the extent it could show KP acted improperly in that representation—to seek sanctions there. Tubi's collateral attack in this case does not gain merit just because Tubi required that KP file Claimants' claims in arbitration. Indeed, any interpretation of D.C. law that allowed a lawsuit for KP's conduct in arbitration, but not for comparable attorney decisions in court, would be preempted by the FAA. *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 253–54 (2017) (state law rule that imposed higher standard for enforceability of arbitration agreements

---

itself, not just protection from liability. *See Iqbal*, 556 U.S. at 685 ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" (citation omitted)).

[10] Tubi also invites the Court to hold that it is "bad faith" to pursue a meritless legal position for many unsophisticated clients, but that doing so for a single sophisticated client is fine. (Dkt. 18 at 31-32 n.21). That self-serving distinction is nowhere to be found in the law.

reflected a "hostility to arbitration" and was therefore preempted by FAA). Tubi could not justify its theory if KP had filed the same claims in court, and it cannot justify its theory here.

> ### 2.   Tubi has not alleged that KP acted with an interest independent of its clients for its sole personal benefit.

Tubi spills so much ink fighting the law because it has not and cannot allege that KP acted independent of its clients' interest for its sole personal benefit. There is an obvious, lawful explanation for KP's alleged conduct: KP believed, based on years of successful efforts on behalf of hundreds of thousands of clients, that Claimants would be better off invoking the delegation clause in the Terms and filing demands immediately. And Tubi's subsequent attempt to amend the Terms to impose further obstacles on Claimants, *see supra* p. 7 and note 5, showed KP was correct.

The facts alleged in the Complaint do nothing to undercut this explanation. To the contrary, the facts *confirm* it. According to Tubi's own allegations, KP "rushed to file these demands for arbitration . . . to force Tubi to settle" with KP's clients. (Dkt. 1 ¶ 62); *see also* (Dkt. 1 ¶¶ 1, 3, 5, 25, 31, 57-58, 63, 68). That is what KP's clients *hired* KP to do, putting the conduct squarely "within the scope of [KP's] employment." *Goldschmidt*, 935 A.2d at 381. And while KP will be paid from settlement proceeds, Claimants will be as well, (Dkt. 1 ¶¶ 25, 31), making that mutually desired outcome "not for [KP's] sole personal benefit." *Goldschmidt*, 935 A.2d at 381. Tubi's opposition repeats various distractions in hopes of filling this void. None are persuasive.

*a. The merit of Claimants' legal theory*: Tubi's false assertion that the underlying claims are meritless, even if accepted as true, does not show that KP pursued an independent interest. The assertion is baseless in any event, even on the face of the pleading. Tubi tells the Court that KP filed numerous frivolous demands because many Claimants were not registered Tubi users. (Dkt. 18 at 1). The premise of this argument is that only registered users have colorable claims. But

Tubi offers its ad-supported services to non-registered as well as registered users, (Dkt. 1 ¶¶ 34-35), and purports to bind all of them to arbitration, (Dkt. 1, Ex. 8 at 126). It is not frivolous for non-registered users to honor their commitment to arbitrate.[11] Tubi's other complaint is that Claimants have not identified which ads were hidden from them. But Claimants have no way of knowing what was hidden from them without discovery and no obligation to plead this in arbitration. *See* Ex. 1 at 28 (describing "perfunctory" pleading standard in arbitration). Tubi does not contest that it allows advertisers to exclude people on the basis of age and sex. Plaintiffs who regularly use Tubi therefore have good reason to know that they have been excluded on the basis of age or sex. Claimants' legal position would be "frivolous" only if it were "not warranted by existing law *or* a good faith argument for the extension, modification, or reversal of existing law." *Kumar v. Ramsey*, 71 Cal. App. 5th 1110, 1120 (2021). Here, KP is adopting a position that flows directly from a published appellate decision and that is consistent with the way *defense* counsel described the holding of that decision, *Liapes v. Facebook, Inc.*, 95 Cal. App. 5th 910, 920–27 (2023), *review denied* (Jan. 10, 2024), in seeking review by the California Supreme Court. *See generally* (Dkt. 14-2). Tubi is free to disagree[12] with that position *before an arbitrator*, but to call the position frivolous is itself frivolous.

---

[11] In fact, the commentary to D.C. Rule of Professional Conduct 3.1, on which Tubi relies, (Dkt. 18 at 25-26, 34-35), expressly states that lawyers have "a duty to use legal procedure for the fullest benefit of the client's cause" and that the "filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery." (Dkt. 18-10 at 62 cmts. 1, 2).

[12] Tubi argues frivolity in part by ridiculing the notion that targeted advertising can be unlawful. (Dkt. 18 at 37). But the Unruh Act is a unique statute. It is narrower than federal civil rights law in that it does not prohibit many forms of disparate impact discrimination. *See, e.g.*, *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 671-72 (2009). But where a business intentionally promotes itself to customers on the basis of a protected characteristic, it is meaningfully broader. *See, e.g.*, *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 39 (1985) (barring "Ladies' Day" sex-based promotional discounts). California courts thus recognize that "[s]trong public policy" supports the Unruh Act's seemingly anomalous application, even in spheres were "[c]ourts are often hesitant to upset

    *b. Individual weaknesses in Claimants' claims*:  After labeling every claim frivolous, Tubi pivots to saying some may be more frivolous than others.  (Dkt. 18 at 26-27).  Tubi argues that KP gains settlement leverage by filing for clients with weaker claims, but that this would harm those clients, who could face sanctions.  This is simply an argument from inconsistent premises:  Tubi inaptly compares KP's interests in successful states of the world with a Claimant's interest in unsuccessful states of the world.  In fact, KP's interests are inexorably linked to the outcome of *each* client's case.  Assume a single client, John Doe, who (according to Tubi) has a weak claim.  If Tubi settles with John Doe because of the fee pressure Tubi complains of, John Doe will be compensated, and KP will take a contingent fee.  If Tubi refuses to settle with John Doe and his claims fail, John Doe would recover nothing, and neither would KP.  Tubi's Complaint states no plausible interest KP could possibly have other than recovering a contingent fee in a client's case.

    *c. Informed client consent*:  Tubi baldly asserts that KP did not obtain informed consent from its clients.  (Dkt. 18 at 26).  Even if true, this would not show any independent interest of KP.  If a lack of informed consent led to litigation conduct that benefitted the client, KP would benefit.  If it does not benefit the client, KP would not benefit.  In the latter scenario, a client might have a malpractice claim against KP or raise a complaint with the bar authorities.  But the attorney litigation privilege does not disappear because an adversary alleges that the lawyer is doing a bad job advising her client.  And Tubi's allegation is precisely the sort of bare recitation of legal elements that courts disregard on a motion to dismiss.  Tubi has no access to the confidential communications, engagement agreements, or disclosures between KP and its clients.  Incanting the words "on information and belief" does not convert conclusory allegations into plausible, well-

_____

traditional practices" that "[s]ome may consider . . . to be of minimal importance or to be essentially harmless." *Id*.

16

pleaded ones. *Iqbal*, 556 U.S. at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

    *d. Conflicts between clients*:  Tubi continues its baseless speculation by asserting that KP must have acted with a conflict of interest without obtaining the consent of its clients.  Even accepting that conjecture as true, this theory does not satisfy the *Goldschmidt* standard as it just repackages the argument from inconsistent premises above.  Weak claims that are *unsuccessful* in creating settlement leverage do not help other clients or KP.  Weak claims that are *successful* in creating settlement leverage help Claimants and KP.  Tubi has not described any situation in which weak claims, or even benefitting one client more than another, could be for KP's "sole personal benefit."  In addition to being insufficient under *Goldschmidt*, Tubi's allegation of conflicts is disentitled to the presumption of truth because it is nothing more than a naked conclusion.  *Id*.  Tubi has no access to or knowledge of the conflict waivers KP has obtained from clients.  Indeed, Tubi does not even contend that KP failed to obtain conflict waivers, presumably because it knows from a case it cites in the Complaint that KP does in fact obtain such waivers.  *See, e.g.*, *In re Centurylink Sales Pracs. & Sec. Litig.*, No. 0:17-CV-02832, 2020 WL 3513547, at *2, *8 (D. Minn. June 29, 2020).  And to the extent Tubi attempts to argue that it is impossible for KP to ethically represent so many clients at once, that assertion fails as a matter of law.  "Lawyers frequently represent multiple clients in civil litigation." (Dkt. 18-10 at 115).  Related ethical issues do arise in the context of settlement, but "[s]ince groups of cases and whole litigations are settled every day for what appear to be lump sums, the real question is how to work it out ethically." (Dkt. 18-10 at 179).  Such settlements are clearly permissible:

> As the text of Rule 1.8(f) indicates, lawyers *may enter into aggregate settlements on behalf of their clients* if the clients are fully informed about the settlement, including the financial or other consideration they and the lawyers' other clients are receiving.

(*Id*. at 116) (emphasis added).  The authorities on which Tubi relies show there is a proper way to conduct aggregate representations.  Tubi cannot plausibly allege that KP has failed to follow this proper way, for the simple reason that there has been no settlement at all.

Beneath the overheated rhetoric and one-sided characterizations, "the allegations of the complaint target [KP's] services as attorneys, nothing more."  *See RSM Prod. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051 (D.C. Cir. 2012).  Because those allegations are merely conclusions that are at best "consistent with" the possibility of misconduct but "equally well explained by legitimate" considerations, they are no basis for tort liability.  *See id*. at 1051-52 (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007)).

### 3.    Tubi's fallback procedural arguments are unpersuasive.

Tubi also contends that attorney immunity is an affirmative defense.  But the *Goldschmidt* doctrine states a litigation privilege.  The entire purpose of the doctrine is to bar claims where the plaintiff sues based on litigation conduct and advice.  Tubi's position cannot be reconciled with *Nave*, 140 A.3d at 456, in which the D.C. Court of Appeals affirmed dismissal at an early stage in the proceedings.  Nor can it be reconciled with the legal position of Tubi's own law firm, Jenner & Block LLP ("Jenner").  Facing a tortious interference claim in Illinois, Jenner recently argued for dismissal based on an analogous privilege.  *See* Ex. 3, Mem. in Supp. of Jenner & Block LLP's Mot. to Dismiss for Lack of Jurisdiction and Failure to State a Claim, *Arwa & Change Advocates, LLP v. Jenner & Block LLP*, No. 1:24-cv-06620, Dkt. 19 at 8-11 (N.D. Ill. Sept. 19, 2024).[13]  And even if the *Goldschmidt* doctrine were an affirmative defense (and it is not), dismissal would still

---

[13] Courts also regularly dismiss cases at the pleading stage when dealing with other specialized forms of immunity.  *See, e.g.*, *Iqbal*, 556 U.S. at 672 (reversing denial of motion to dismiss based on assertion of qualified immunity); *Smith v. Scalia*, 44 F. Supp. 3d 28, 40 (D.D.C. 2014) ("claims against the individual judge defendants in their personal capacities are barred under the doctrine of absolute judicial immunity and thus must be dismissed pursuant to Rule 12(b)(6)").

be appropriate because "an affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).

**II.    Tubi's attempts to avoid arbitration through declaratory relief should be dismissed.**

The Court should also dismiss Tubi's claims for declaratory relief, which it concedes are derivative of its tortious interference claim. (Dkt. 12 at 4). Tubi seeks three declarations. (Dkt. 1 ¶ 83). The first would confirm the tortious interference claim, which the Court should dismiss for the reasons in Section I, *supra*.

The Court should also dismiss Tubi's two other requests for declarations regarding the sufficiency of Claimants' demands and KP's duties to others. (Dkt. 1 ¶ 83). The Court has broad discretion not to waste judicial resources on duplicative requests for declaratory relief. 28 U.S.C. § 2201(a); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Denial is particularly appropriate here given the federal policy favoring arbitration and the fact that Tubi's requests ask the Court to do what an arbitrator is already doing. (Dkt. 18 at 33-34). Tubi cites *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293-94 (2002), for the proposition that the FAA does not *require* dismissal because KP is not a party to the Terms. (Dkt. 18 at 33). But the Supreme Court later cast aside the portion of *Waffle House* on which Tubi relies as unpersuasive dicta. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009) (in *Waffle House*, the EEOC "obviously had no third-party obligations under the contract in question").

In all events, in its attempt to avoid the conflict with the FAA, Tubi has argued itself out of Article III standing. Tubi's opposition promises that, if the Court keeps its declaratory relief claims alive, it will not use any resulting declaration for preclusive effect in the arbitrations.

(Dkt. 18 at 4, 34).   Taking Tubi at its word, Tubi has no Article III[14] standing to seek the declarations.  The Complaint identifies no way in which such declarations could affect Tubi *other than* by impacting the arbitrations.  (Dkt. 1 ¶ 82 (identifying harm that declarations would remedy as the possibility that KP "maintains existing and future arbitrations against Tubi based on the same legal theory")).  Litigants cannot ask courts to exercise Article III authority simply because they are curious to know the answer to a legal question.

Finally, Tubi's request for a declaration that KP violated its obligations should also be denied for failure to state a claim and for lack of third-party standing.  Tubi's conclusions about vetting and conflicts should not be credited because Tubi has no plausible basis to allege them. *See supra* Section I.C.2.  Additionally, "a party 'must assert his own legal rights' and 'cannot rest his claim to relief on the legal rights . . . of third parties.'"  *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) (omission in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  To overcome this rule, a party asserting a third party's rights must show:  (1) "a 'close' relationship with the person who possesses the right" and (2) "a 'hindrance' to the possessor's ability to protect his own interests."  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).  Tubi claims it was harmed by KP's purported breaches of D.C. Rules of Professional Conduct 1.3 (Diligence and Zeal), 1.7 (Conflicts of Interest: General Rule), and 3.1 (Meritorious Claims and Contentions), but these Rules describe duties KP owes to Claimants and JAMS, not Tubi.  (Dkt. 18 at 35); (Dkt. 1 ¶¶ 29, 56); (Dkt. 18-10 at 14, 24-30, 62).  Tubi has not attempted to show a "close" relationship with KP's clients (with whom it has an adversarial

---

[14] KP pointed out that the availability of sanctions in JAMS and Tubi's successful effort to win extra-contractual consolidation rendered speculative any injury that Tubi now claims justify Article III standing.  (Dkt. 14-1 at 44).  That standing argument was not, as Tubi now claims (Dkt. 18 at 35-36), an admission that such sanctions are justified or a proper basis for Tubi to harass Claimants who no longer wish to pursue a claim in arbitration.

relationship) or JAMS (before which it is proceeding as a party), nor has it shown any "hindrance" to KP's clients or JAMS raising the matters it purports to champion for them. The Court should therefore dismiss Tubi's third claim for declaratory relief for lack of third-party standing. *See, e.g.*, *Metro. Wash. Chapter, Associated Builders & Contractors, Inc. v. District of Columbia*, 62 F.4th 567, 573–74 (D.C. Cir. 2023) (affirming dismissal of claims for lack of third-party standing where plaintiff did "not attempt to show" a close relationship or hindrance "to surmount the general bar on vicariously asserting the rights of third parties").

**III.    Alternatively, the FAA requires the Court to stay this case pending resolution of issues referable to arbitration under the Terms.**

If the Court does not dismiss, Section 3 of the FAA requires that when a suit is brought

> upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . .

9 U.S.C. § 3. Every requirement for such a stay is met here. The Terms are valid, written arbitration agreements between Tubi and Claimants. The central issue in this suit—whether Claimants breached the Terms by challenging the validity of Section 10(7) pursuant to the delegation clause—is referrable to arbitration under that same delegation clause, which Tubi put in the Terms. And KP, the party applying for a stay, is a party to *this suit*, which is all Section 3 requires. *Arthur Andersen*, 556 U.S. at 630 n.4. This Court therefore has no discretion, absent dismissal on independent grounds, *but* to stay the action under Section 3 until arbitration is had over the "issue referable to arbitration." 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

Tubi tries to resist this conclusion by claiming that a Section 3 stay is available only where "the *parties* have agreed to arbitrate an issue" and the stay is sought "so that the parties may arbitrate that issue and later return to court." (Dkt. 18 at 37). But neither the text of the FAA nor the caselaw interpreting it limits a district court's obligation to stay litigation under Section 3 to

such specific circumstances.  In fact, Tubi's contention that only parties who have agreed to arbitrate may obtain a Section 3 stay flouts Supreme Court precedent rejecting the notion that "those who are not parties to a written arbitration agreement are categorically ineligible for [§ 3] relief."  *Arthur Andersen*, 556 U.S. at 629.  The rule is now that "a litigant who," like KP, "was not a party to the relevant arbitration agreement *may* invoke Section 3 if the relevant state contract law allows him to enforce the agreement."  *Id.* at 632 (emphasis added); *see also id.* at 630 n.4.[15]

And KP can indeed enforce the Terms' delegation clause—the agreement at issue— through equitable estoppel.  *See id.* at 631.  "[A] party with full knowledge of the facts, which accepts the benefits of a transaction [or] contract . . . may not subsequently take an inconsistent position to avoid the corresponding obligations or effects."  *Fairman v. District of Columbia*, 934 A.2d 438, 443 (D.C. 2007) (internal quotation marks and citation omitted); *accord McGlynn v. California*, 21 Cal. App. 5th 548 (2018); *Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 12 (Del. 2000).  The Terms, which Tubi drafted and imposed on Claimants, benefited Tubi by limiting its exposure to class action liability.  But when, as a "direct result of the mandatory arbitration clause and class action waiver" that it imposed, Tubi faced an "arbitration fee in response to each individual arbitration demand," *Adams v. Postmates*, 414 F. Supp. 3d 1246, 1252 n.2 (N.D. Cal. 2019), Tubi tried and failed to get JAMS to thwart the arbitrations and then recycled its arguments into this lawsuit—ostensibly against Claimants' lawyers, but really against the arbitrations themselves.  Although Tubi now says that it is "not trying to *avoid* arbitrating" (Dkt. 18 at 40) and

---

[15] For the same reason, Tubi's reliance on *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 333 F.3d 250, 254 (D.C. Cir. 2003), is misplaced.  The remark there that Section 3 motions ask courts to "order arbitration" and therefore "presuppose[] the party's intent to arbitrate," *id.*, simply reflected the court's incorrect pre-*Arthur Andersen* understanding that a Section 3 motion would necessarily be tied to an arbitration between the parties to the lawsuit, as nonsignatory parties could not (at that time) bring Section 3 motions in this Circuit.  *See, e.g.*, *DSMC Inc. v. Convera Corp.*, 349 F.3d 679, 682-85 (D.C. Cir. 2003), *abrogated by Arthur Andersen*, 556 U.S. at 629-31.

reassures the Court that it will not use this proceeding to interfere with the arbitrations, the avowed purpose of this suit is to end them (Dkt. 1 ¶ 85).   Under these circumstances, KP may invoke equitable estoppel to prevent Tubi from shirking its obligation to resolve delegated disputes with KP's clients, who are closely related parties.[16]  *See Arthur Andersen*, 556 U.S. at 632; *Smith*, 601 U.S. at 478.

Tubi incorrectly asserts that equitable estoppel only applies where a nonsignatory defendant seeks to *compel* arbitration with a signatory plaintiff who would otherwise have to *bring* its claim in arbitration.  (Dkt. 18 at 39-40).  Although this is the typical factual scenario courts have faced in applying equitable estoppel in the arbitration context, Tubi provides no reason why the principles underlying the doctrine should not apply whenever a signatory seeks to circumvent or impair arbitration through the procedural trick of suing a closely-related nonsignatory in court. And contrary to Tubi's mischaracterization, (Dkt. 18 at 37-38), *Arthur Andersen*'s holding that a nonsignatory may seek and obtain a Section 3 stay did not turn on the fact that the nonsignatory in that case *also* sought to arbitrate.  The text of Section 3 "does not require that the claims in the instant suit be referrable to arbitration," just that "an issue involved in the suit be referrable."  *CPB Contractors Pty Ltd. v. Chevron Corp.*, No. 4:16-CV-05344, 2017 WL 7310776, at *4 (N.D. Cal. Jan. 17, 2017); *see also Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002).

Tubi dismisses *Hill* and *CPB Contractors* because, Tubi contends, (1) their "approach has no grounding in Section 3's text"; (2) their framing of the decision to grant a Section 3 stay as

---

[16] Tubi cites *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008), to cast doubt on the relevance of equitable estoppel principles in this context, but (1) the fee-shifting provisions of the Terms *assume* the existence of attorneys, "nonsignatory entities that are affiliated or associated with the counterparty in such a manner as to make it unfair to allow the signatory to avoid its commitment to arbitrate," *id.*; *see also* (Dkt. 14-1 at 53); and (2) equitable estoppel principles apply where a party, as Tubi did here, accepts the benefits of a contract and then attempts to disavow "corresponding obligations or effects."  *See Fairman*, 934 A.2d at 443.

"discretionary" "is incompatible with the Supreme Court's recent *Smith* decision"; and (3) their approach "has never been adopted by the D.C. Circuit." (Dkt. 18 at 38). The first contention ignores *Arthur Andersen*, the holding of which is that the text and structure of the FAA permits a nonsignatory to seek and obtain a Section 3 stay. 556 U.S. at 630-31. The second contention supports KP's position because, regardless of whether the courts in *Hill* and *CPB Contractors* understood the decision to grant a Section 3 stay as mandatory, *Smith* bolsters the application of those decisions here. In *Smith*, the Court held that absent independent grounds for dismissal, a district court *must* grant a stay after receiving a meritorious Section 3 application. *Smith*, 601 U.S. at 476-77, 476 n.2. *Hill* and *CPB Contractors*, both of which evaluated stay applications under Section 3 and correctly concluded that a stay should issue under Section 3's text, would be decided identically after *Smith*, just faster because the mandatory nature of a Section 3 stay is now clear. Lastly, Tubi's third contention is the direct result of its "creative . . . attempt[] to circumvent some of the bright-line rules that typically shield attorneys from liability" (Dkt. 18-10 at 125) to achieve the same end that the signatory parties in *Hill* and *CPB Contractors* sought: improper removal to court of issues pending in arbitration. The novelty of Tubi's approach in this Circuit is no basis to ignore *Hill*, *CPB Contractors*, or Section 3's text.

Finally, Tubi attempts to avoid Section 3 by claiming it applies only where the parties to the arbitration agreement[17] might eventually return to court to litigate claims if arbitration fails to resolve them. (Dkt. 18 at 37). That argument is no help to Tubi, as KP does not ask the Court to allow it to forever "avoid arbitrating or litigating Tubi's tortious interference claim." (*Id.* at 38).

---

[17] *Smith* did not even involve a nonsignatory seeking a Section 3 stay. 601 U.S. at 474. As such, that case could not have overturned *Arthur Andersen*'s holding that a nonsignatory to the arbitration agreement may do so, especially given that "the Supreme Court 'does not normally overturn, or [ ] dramatically limit, earlier authority *sub silentio*.'" *See Al-Tamimi v. Adelson*, 916 F.3d 1, 12 (D.C. Cir. 2019) (alteration in original) (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000)).

KP simply asks for a mandatory stay under Section 3 so that the arbitrable issues Tubi attempts to litigate through this collateral judicial proceeding can first be arbitrated as required.

## CONCLUSION

This lawsuit is Tubi's attempt to circumvent an agreement that it drafted but now regrets. Through the Terms, Tubi forced Claimants to bring their claims in arbitration instead of through a class action. And by including a delegation clause, Tubi required Claimants (and itself) to arbitrate to resolve any arbitrability issues. Now, having decided that it does not like the natural result of these choices, Tubi tries suing opposing counsel based on its disagreement with the competent legal advice its adversaries received. But unable to state a claim, Tubi attempts to water down the attorney litigation privilege in a way that would allow any litigant to sue opposing counsel.

Tubi cannot amend the Complaint to resolve these flaws. No additional detail can change that Claimants complied with the delegation clause in filing their demands. No additional detail can change that whatever injury Tubi thinks it suffered was the result of its own choices, whether to delegate arbitrability or, accepting Tubi's position that the demands were deficient, Tubi's discretionary decision to pay the JAMS fees when it was not required to. No additional detail can identify any interest KP had apart from its clients when, at bottom, Tubi's fundamental complaint is about the advice KP gave to clients to further the clients' claims in a matter where KP was compensated on a contingent basis. The Court should dismiss the Complaint with prejudice.

Dated:  October 30, 2024                    Respectfully submitted,

                                            KELLER POSTMAN LLC

                           By:    /s/ Warren D. Postman
                                  Warren D. Postman (Bar No. 995083)
                                  Albert Y. Pak (Bar ID 888314242)
                                  Fred Messner (*pro hac vice* pending)
                                  1101 Connecticut Avenue N.W.
                                  Suite 1100
                                  Washington, DC 20036
                                  (202) 918-1123
                                  wdp@kellerpostman.com
                                  albert.pak@kellerpostman.com
                                  fred.messner@kellerpostman.com

                                  Kiran N. Bhat (Bar No. 1021898)
                                  2333 Ponce De Leon Boulevard
                                  Suite 100
                                  Coral Gables, FL 33134
                                  (305) 845-4684
                                  kiran.bhat@kellerpostman.com

                                  *Attorneys for Defendant*