UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TUBI, INC.,<br>    Plaintiff,<br><br> v.<br><br>KELLER POSTMAN LLC,<br>    Defendant. | Civil Action No. 1:24-cv-01616-ACR<br><br>Judge Ana C. Reyes |

**<u>PLAINTIFF TUBI, INC.'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT</u>**

                     JENNER & BLOCK LLP
                     Brandon D. Fox (*pro hac vice*)
                     Kelly M. Morrison (D.C. Bar No. 1046293)
                     Sati Harutyunyan (D.C. Bar No. 1049009)
                     515 South Flower Street, Suite 3300
                     Los Angeles, CA 90071-2246
                     Telephone: (213) 239-5100
                     Facsimile: (213) 239-5199
                     bfox@jenner.com
                     kmorrison@jenner.com
                     sharutyunyan@jenner.com

                     *Attorneys for Plaintiff Tubi, Inc.*

November 25, 2024

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff Tubi, Inc. ("Tubi") moves for leave to file an amended complaint. Tubi's proposed amended complaint is attached as **Exhibit A**. A redline comparing the amended and original complaints is attached as **Exhibit B**. Tubi's counsel asked Keller Postman whether it would consent to the filing of this amended complaint, but Keller Postman indicated that it would not do so. Accordingly, Tubi asks the Court to allow it to do so.

Tubi seeks to amend its complaint to allege additional facts because its continuing investigation has revealed troubling details that further confirm Defendant Keller Postman LLC's ("Keller Postman") tortious interference—specifically, that Keller Postman brought meritless arbitration claims, acted without consulting its clients, and did not obtain those clients' informed consent when it caused them to breach the informal dispute resolution process in Tubi's Terms of Use. Tubi does not seek to add any additional claims for relief. Indeed, the proposed amended complaint narrows and clarifies the injunctive and declaratory relief Tubi is seeking.

## FACTUAL BACKGROUND

On May 31, 2024, Tubi filed its original complaint against Keller Postman. *See* Compl., ECF No. 1. Tubi alleges in the original complaint that Keller Postman tortiously interfered with the arbitration agreements between Tubi and Tubi's users by inducing those users to file arbitration claims in breach of their contractual obligations to provide notice and participate in an informal dispute resolution process with Tubi prior to filing. Those claims are based on a theory that Tubi's targeted advertising to its registered users violates California law. Keller Postman filed a motion to dismiss, and that motion has now been fully briefed. The Court's hearing on that motion is scheduled for December 19, 2024.

There are two primary additions to the amended complaint. First, Tubi describes how it hired a former FBI Special Agent (the "Investigator") to interview former claimants whose arbitration demands have been withdrawn by Keller Postman.[1] *See* Proposed Am. Compl. ¶¶ 77–81. Tubi was able to locate 22 of those 29 individuals. The Investigator proceeded to interview the 19 individuals who informed the Investigator that they were no longer represented by Keller Postman or believed they were never represented by Keller Postman (the "Withdrawn Claimants"). *Id.* ¶ 78. These claimants confirmed many of the allegations in the original complaint while adding troubling new information that has been incorporated into the amended complaint.

Among other things:

- Most of the Withdrawn Claimants were unaware of the very basics of their claims, and some were unaware of any claims even being filed in their names. Among other things, three denied ever agreeing to file a claim, four knew nothing about the claims, and eight believed the claims concerned a data breach or a release of personal information. *Id.* ¶ 78(b)–(c). Only two believed the claims had anything to do with advertising, one of whom wanted to watch *more* rather than less targeted advertising. *Id.* ¶¶ 78(c), 79(c).

---

[1] Under applicable ethical rules, except under limited circumstances, Tubi's counsel may not communicate with represented parties, and has not done so here. However, between May and November 2024, Keller Postman withdrew demands for arbitration it had filed in the names of 29 individuals. Proposed Am. Compl. ¶ 77. At the direction of Tubi's counsel, the Investigator inquired whether these individuals were still represented by Keller Postman, and upon learning that they were no longer or never had been represented by Keller Postman, admonished them not to disclose communications they had with their attorneys. *Id.* ¶ 78. Only after taking these steps to avoid any intrusion into the attorney-client relationship did the Investigator proceed.

2

- Two of the Withdrawn Claimants said they did not have Tubi accounts, while a third was unsure. *Id.* ¶ 78(d). A fourth created a Tubi account for purposes of filing a claim against Tubi. *Id.*

- The Investigator asked 13 of the Withdrawn Claimants who stated that they had Tubi accounts and had agreed to file claims against Tubi about the informal dispute resolution provision in the arbitration agreement. *None* was aware of the contractual requirements that claimants give notice and participate in an informal dispute resolution process before proceeding to arbitration. *Id.* ¶ 78(e). Thus, *none* of the claimants knew that their lawyers had caused them to breach their arbitration agreements. *Id.*

The amended complaint also discusses how the Investigator could not locate three individuals. *Id.* ¶ 77. One listed in her arbitration demand an address where she did not live, and the current occupants had been living there several years. *Id.* Another listed a homeless shelter as her residence. *Id.* A third listed a drug and alcohol dependency rehabilitation center as his residence. *Id.*

The amended complaint further states that several of the Withdrawn Claimants voluntarily provided declarations under penalty of perjury. *Id.* ¶ 79. Those declarations offer detailed descriptions of the claimants' experiences with Keller Postman and recount that those claimants had no idea of the basis of their claims and no idea that Keller Postman was causing them to breach their arbitration agreements. *Id.*

These additional factual allegations rebut several of the factual representations Keller Postman has made to the Court. For example, Keller Postman represented that (1) its "clients *each* understood that they were subject to the JAMS arbitration agreement in Tubi's Terms," Motion to

3

Dismiss at 17, ECF No. 14-1 (emphasis added); (2) its "*clients* took the position that [the informal dispute resolution provision] was unconscionable and unenforceable," *id.* at 18 (emphasis added); and (3) "Keller Postman advised [its] clients to file claims without delay—the act Tubi asserts to be a breach," *id.* at 29. Based on the Investigator's interviews of the Withdrawn Claimants, Keller Postman's representations to this Court were false. Proposed Am. Compl. ¶¶ 80–81.

In its second primary addition to the complaint, Tubi adds factual material regarding its allegation that Keller Postman filed fraudulent arbitration demands. Tubi's original complaint alleged that approximately 40% of claimants' claims were frivolous. Compl. ¶ 51. The amended complaint explains how Tubi calculated that number, while adding updated information derived from Tubi's supplemental investigation. Proposed Am. Compl. ¶¶ 55–56.

Tubi calculated the number of fraudulent users in the original complaint by comparing the information in Keller Postman's arbitration demands to Tubi's customer relationship management database, which lists emails and device IDs and which Tubi relies on to send notifications and marketing messages to users. *Id.* ¶ 55. Tubi since has compared the information in Keller Postman's arbitration demands to Tubi's primary account database, which is a separate, protected database containing information about Tubi's users. *Id.* ¶ 56. The primary account database tells a similar story.

Each arbitration demand alleges that the claimant "maintained a Tubi account under" a particular listed email address and "used Tubi's ad-supported video streaming service through Tubi's website (tubitv.com) or mobile application." Compl., Ex. 15. It further alleges that "[w]hen Claimant streamed videos on Tubi during that time, Claimant watched multiple advertisements that Tubi interspersed throughout the videos Claimant was streaming." *Id.* The claimants' theory is that this advertising constituted "illegal discriminatory advertising." *Id.* According to Tubi's

4

analysis of its primary account database, however, several thousand claimants have never been registered users of Tubi's platform, meaning none of them provided personal information to Tubi as alleged in the demand. Proposed Am. Compl. ¶ 56(a). Tubi further determined that the primary account database shows that approximately 7,700 claims are fraudulent, broken down in rough numbers as follows: (a) 4,500 claimants did not even begin the account registration process; (b) 600 claimants input an email address but neither verified their emails nor watched content on the Tubi platform using an account linked to their emails during the period relevant to the demands; and (c) 2,500 claimants completed the account verification process but did not watch content on the Tubi platform using their accounts during the period relevant to the demands. *Id.* ¶¶ 56(a)–(c).

In addition to these two primary changes, Tubi has made a number of minor amendments throughout the filing. Among these, Tubi has narrowed and clarified its request for injunctive and declaratory relief to tailor that request to the scope of its claims.

## ARGUMENT

The Court should grant Tubi leave to file its amended complaint.

"A party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 38 (D.C. Cir. 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[U]nder Rule 15, 'the non-movant generally carries the burden in persuading the court to deny leave to amend.'" *Rowe v. PChange, LLC*, No. 22-

3098 (JEB), 2024 WL 1655348, at *3 (D.D.C. Apr. 17, 2024) (quoting *Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C. 2004)).

Here, there is no basis to deny leave to amend. First, there has been no "undue delay." *Barkley*, 766 F.3d at 38. This case is at a very early stage: the Court has not yet resolved Keller Postman's motion to dismiss, and therefore the Defendant has not answered the complaint and the parties have not begun discovery. Courts consider cases to be "early" for Rule 15 purposes when they have proceeded further than this one has. *See, e.g.*, *Perez v. Kipp DC Supporting Corp.*, No. 21-929 (RC), 2024 WL 3534769, at 812 (D.D.C. July 25, 2024) ("This case was remanded from the Circuit less than a year ago and discovery has not yet been completed. Given the relatively early stage in the proceedings, amendment to the complaint would not cause undue delay.") (quotation marks omitted)); *Pappas v. Dist. of Columbia*, 513 F. Supp. 3d 64, 101 (D.D.C. 2021) (permitting amendment after motion to dismiss had been decided, and reasoning that "[g]iven that this case is still in its beginning stages, and allowing amendment will not prejudice Defendants, there is no sufficient reason to deny this request"). Based on the stage of the case, there is no basis to deny leave to amend. *Ashbourne v. Hansberry*, 894 F.3d 298, 303 (D.C. Cir. 2018) (stating that when the case is at a "very early procedural juncture," an amendment is "presumptively permissible").

Second, Tubi has no "bad faith or dilatory motive." *Barkley*, 766 F.3d at 38. Tubi is amending the complaint to clarify and bolster its allegations before discovery begins. One reason Tubi has been put in the position of having to conduct its own investigation into the facts of the claimants' demands is that Keller Postman caused its clients not to provide those facts to Tubi, shifting the burden onto Tubi in breach of contract.

6

Third, there has been no "repeated failure to cure deficiencies by amendments previously allowed." *Id*. The Court has identified no deficiencies, and this is Tubi's first amended complaint.

Fourth, there would be no "undue prejudice to the opposing party by virtue of allowance of the amendment." *Id*. "Undue prejudice is not mere harm to the non-movant but a denial of the opportunity to present facts or evidence which would have been offered had the amendment been timely." *Perez*, 2024 WL 3534769, at *12 (quoting *Does I through III v. Dist. of Columbia*, 815 F. Supp. 2d 208, 215 (D.D.C. 2011) (quotation marks omitted)). Because Tubi filed its proposed amended complaint prior to discovery, granting leave to amend would not deny Keller Postman any opportunity to present facts or evidence. Although the parties would potentially have to re-brief the motion to dismiss, or portions of it, "the prejudice to Defendants of having to file another motion to dismiss addressing similar claims is minimal." *Joyner v. Morrison & Foerster LLP*, No. 20-1440 (TJK), 2021 WL 6502542, at *1 (D.D.C. Feb. 12, 2021).

Fifth, an amendment would not be "futil[e]." *Barkley*, 766 F.3d at 38. For the reasons explained in Tubi's opposition to Keller Postman's motion to dismiss, this case should proceed. The amendments bolster Tubi's factual allegations and hence strengthen Tubi's case.

## CONCLUSION

The motion for leave to amend should be granted.

7

DATED: November 25, 2024          JENNER & BLOCK LLP

By: /s/ *Brandon D. Fox*
    Brandon D. Fox (*pro hac vice*)
    BFOX@JENNER.COM
    Kelly M. Morrison (D.C. Bar No. 1046293)
    kmorrison@jenner.com
    Sati Harutyunyan (D.C. Bar No. 1049009)
    sharutyunyan@jenner.com
    515 South Flower Street, Suite 3300
    Los Angeles, CA 90071-2246
    Telephone:  (213) 239-5100
    Facsimile:  (213) 239-5199

*Attorneys for Plaintiff*

**INDEX OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| A | Proposed First Amended Complaint<br><br>Exhibits to Proposed First Amended Complaint:<br><br>1. Troxel Law Better Business Bureau Ratings<br>2. Keller Postman Mass Arbitration Practice<br>3. Claim Solicitation and Sign-up<br>4. Complaint in *Cacho v. Keller Postman LLC*<br>5. Complaint in *Dominguez v. Keller Postman LLC*<br>6. Complaint in *Gonzalez v. Keller Postman LLC*<br>7. Letter from Jaime Huff to Public Trust Liaison, State Bar of California<br>8. Tubi's Terms of Use effective May 1, 2022<br>9. Tubi's Terms of Use effective April 18, 2024<br>10. Instagram Advertisement<br>11. Claim Solicitation and Sign-up<br>12. YouTube Advertisement<br>13. Claim Solicitation<br>14. Claim Solicitation<br>15. Declarations filed by Keller Postman<br>16. Sample Demand for Arbitration Form filed by Keller Postman<br>17. 2024-04-19 Email from B. Fox to JAMS<br>18. 2024-04-25 Letter from B. Fox to W. Postman re Tubi, Inc.<br>19. 2024-04-26 Letter from W. Postman to JAMS re Tubi Arbitrations<br>20. JAMS Announces Mass Arbitration Procedures and Guidelines<br>21. JAMS Mass Arbitration Procedures and Guidelines<br>22. JAMS Mass Arbitration Procedures Fee Schedule<br>23. Declaration of LD<br>24. Declaration of MS<br>25. Declaration of SA<br>26. Declaration of DE<br>27. Declaration of DL<br>28. Declaration of MD<br>29. Excerpts from Transcript of September 4, 2024 Hearing<br>30. Keller Postman's Brief in Support of Motion to Dismiss or Stay |
| B | Redline Comparing Original Complaint to Proposed First Amended Complaint |

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Tubi conferred with Keller Postman regarding this Motion.

Keller Postman indicated that it does not consent to amendment and will oppose this Motion.

DATED: November 25, 2024　　　　　　　　　By: /s/ *Brandon Fox*
　　　　　　　　　　　　　　　　　　　　　　　　Brandon D. Fox

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 25th day of November, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                           By: /s/ *Brandon Fox*
                                                                     Brandon D. Fox