## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TUBI, INC.,

     Plaintiff,

v.

KELLER POSTMAN LLC,

     Defendant.

Case No. 1:24-cv-01616-ACR

## DEFENDANT KELLER POSTMAN LLC'S OPPOSITION TO
## PLAINTIFF TUBI, INC.'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

KELLER POSTMAN LLC
  Warren D. Postman (Bar ID 995083)
  Albert Y. Pak (Bar ID 888314242)
  Fred Messner (admitted *pro hac vice*)
1101 Connecticut Avenue N.W.
Suite 1100
Washington, DC 20036
(202) 918-1123
wdp@kellerpostman.com
albert.pak@kellerpostman.com
fred.messner@kellerpostman.com

  Kiran N. Bhat (Bar ID 1021898)
2333 Ponce De Leon Boulevard
Suite R-240
Coral Gables, FL 33134
(305) 845-4684
kiran.bhat@kellerpostman.com

*Attorneys for Defendant*

Dated:  December 9, 2024

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INDEX OF EXHIBITS ........................................................................................................... iv

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT ......................................................................................................................... 9

    I.   Tubi Has Demonstrated Undue Delay in Seeking Leave to Amend the Complaint........10

    II.  Amendment Would Be Futile Because Tubi's Proposed Amended Complaint Cures
       None of the Complaint's Fatal Flaws. ...........................................................................14

        A.  Tubi's Proposed Amended Complaint Still Fails to Allege Breach. ...................... 15

        B.  Tubi's Proposed Amended Complaint Still Fails to Allege Damages Flowing
            from the Alleged Breach. ........................................................................................ 16

        C.  Tubi's Proposed Amended Complaint Still Fails to Allege Facts Plausibly
            Showing that Keller Postman's Legal Advice Triggered the Narrow
            Exception to the Litigation Privilege ...................................................................... 18

    III.  The Court Should Not Allow Tubi to Delay the Scheduled Hearing on the Pending
        Motion to Dismiss. .......................................................................................................20

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashbourne v. Hansberry*,
   894 F.3d 298 (D.C. Cir. 2018) ........................................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................15, 19

*Barnes v. District of Columbia*,
   42 F. Supp. 3d 111 (D.D.C. 2014) ...............................................................................10, 20

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................................17

*In re Dale*,
   No. 00-O-14350, 2005 WL 1389226 (Cal. Bar Ct. May 6, 2005) ...........................................8

*Doe v. McMillan*,
   566 F.2d 713 (D.C. Cir. 1977) ..........................................................................................9

*Foman v. Davis*,
   371 U.S. 178 (1962) .........................................................................................................9

*Goldman v. Barrett*,
   825 F. App'x 35 (2d Cir. 2020) ........................................................................................2

*\*Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper, Chartered*,
   935 A.2d 362 (D.C. 2007) ........................................................................................14, 18, 20

*Harrison v. Rubin*,
   174 F.3d 249 (D.C. Cir. 1999) .........................................................................................13

*Honickman for Estate of Goldstein v. BLOM Bank SAL*,
   432 F. Supp. 3d 253 (E.D.N.Y. 2020) ...............................................................................12

*\*In re Interbank Funding Corp. Sec. Litig.*,
   629 F.3d 213 (D.C. Cir. 2010) ...............................................................................10, 14, 20

*James Madison Ltd. by Hecht v. Ludwig*,
   82 F.3d 1085 (D.C. Cir. 1996) ........................................................................................14

*Mowrer v. U.S. Dep't of Transp.*,
   14 F.4th 723 (D.C. Cir. 2021) ........................................................................................9, 10

*\*Murray v. Wells Fargo Home Mortg.*,
   953 A.2d 308 (D.C. 2008) ..................................................................................14, 16, 18, 20

*Nave v. Newman*,
    140 A.3d 450 (D.C. 2016) ........................................................................19

*Nycomed US Inc. v. Glenmark Generics Ltd.*,
    No. 08-cv-5023, 2010 WL 3173785 (E.D.N.Y. Aug. 11, 2010) ................................5

*Rosenthal v. Sonnenschein, Nath & Rosenthal, LLP*,
    985 A.2d 443 (D.C. 2009) ........................................................................16

*Shenandoah Assocs. Ltd. v. Tirana*,
    322 F. Supp. 2d 6 (D.D.C. 2004) ...............................................................18

*Shoney's Inc. v. Lewis*,
    875 S.W.2d 514 (Ky. 1994) .......................................................................9

*Volunteer Fire Ass'n of Tappan, Inc. v. County of Rockland*,
    No. 09-cv-4622, 2010 WL 4968247 (S.D.N.Y. Nov. 24, 2010)............................12

*Wallrich v. Samsung Elecs. Am., Inc.*,
    106 F.4th 609 (7th Cir. 2024) ...................................................................17

*Wilcox v. Georgetown Univ.*,
    No. 18-cv-0422, 2023 WL 2734224 (D.D.C. Mar. 31, 2023) ...............................13

*Williams v. Ellerbe*,
    317 F. Supp. 3d 144 (D.D.C. 2018)....................................................14, 16, 18, 20

## Statutes

Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* .................................................3

## Other Authorities

Cal. R. Prof. Conduct 4.2............................................................................7

Fed. R. Civ. P. 15 .........................................................................3, 7, 9, 10, 11

## INDEX OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | Settlement Agreement, *Gregory v. Tubi, Inc.*, No. 24-LA-209 (Ill. 17th Jud. Cir. Ct. July 26, 2024) |
| 2 | Petition to Intervene, *Gregory v. Tubi, Inc.*, No. 24-LA-209 (Ill. 17th Jud. Cir. Ct. Oct. 7, 2024) |
| 3 | Affidavit of Brandon D. Fox in Support of Tubi's Opposition to Petition to Intervene, *Gregory v. Tubi*, *Inc.*, No. 24-LA-209 (Ill. 17th Jud. Cir. Ct. Oct. 30, 2024) |
| 4 | Tubi's Opposition to Petition to Intervene, *Gregory v. Tubi*, *Inc.*, No. 24-LA-209 (Ill. 17th Jud. Cir. Ct. Oct. 30, 2024) |
| 5 | Email from Tubi to Marvin Cheng, dated Oct. 17, 2020. |
| 6 | Letter from Warren Postman to Brandon Fox, dated Nov. 1, 2024 |
| 7 | Letter from Brandon Fox to Warren Postman, dated Nov. 11, 2024 |
| 8 | Declaration of Warren D. Postman, dated Dec. 9, 2024 |
| 9 | Declaration of Lumeah Deschamps, dated Dec. 6, 2024 |
| 10 | Declaration of DeNeisha Ellis, dated Dec. 6, 2024 |
| 11 | Declaration of Monique Dudley, dated Dec. 6, 2024 |
| 12 | Tubi's Surreply Opposing Objections and Requests for Exclusion, *Gregory v. Tubi, Inc.*, No. 24-LA-209 (Ill. 17th Jud. Cir. Ct. Dec. 3, 2024) |

## INTRODUCTION

After months of litigation, and having passed up the opportunity to amend its Complaint of right, Tubi now seeks to derail the Court's hearing on the fully briefed motion to dismiss by seeking leave to amend its Complaint. (Dkt. 22). Tubi's proposed amendments tellingly walk back allegations in the original Complaint accusing Keller Postman of misconduct because Tubi has been forced to concede they are false, the result of an unreasonably underinclusive investigation by Tubi's counsel prior to filing the Complaint. (Dkt. 22-32 at 24–26). But, in an apparent effort to compensate for that retraction, Tubi asks to include new allegations about Keller Postman's supposed ethical failures. It is becoming increasingly clear that the accusations against Keller Postman by Tubi's counsel are an act of projection. Instead of showing any misconduct by Keller Postman, the new allegations show a shocking pattern of unethical conduct by Tubi's counsel. Specifically, Jenner & Block ("Jenner") and Tubi's in-house counsel hired an investigator to show up at the homes of Keller Postman clients and interrogate them using intimidating and misleading tactics, such as causing them to believe they were speaking with an FBI agent and refusing to leave when asked or leaving clients with the impression that they were speaking to an agent of Keller Postman. The investigator then pressured the clients into signing demonstrably false declarations under penalty of perjury.

These are serious ethical breaches, and Keller Postman is filing a motion to disqualify Jenner in parallel with this opposition. But while Tubi's amendments show that Tubi's counsel have flagrantly violated ethical rules, they do not change the legal analysis on Keller Postman's motion to dismiss at all. As shown in the fully completed briefing on the motion to dismiss, Tubi has not and cannot alleged a breach of contract, has not and cannot allege damages flowing from a breach, and has not and cannot show that Keller Postman has pursued an interest independent of its clients' interest, solely for its own benefit. Tubi's motion for leave to amend should be denied.

## BACKGROUND

On May 31, 2024, Tubi filed the Complaint on the theory that Keller Postman committed a tort by filing arbitration demands on behalf of its clients (the "Claimants") without first complying with a procedural provision in Tubi's Terms of Service ("Terms"), the enforceability of which the Claimants contested in their demands.  (Dkt. 1 ¶¶ 52–54); (Dkt. 1, Ex. 15 at 208). Alongside *non sequiturs* and *ad hominem* attacks, the Complaint contained specific representations that Tubi's counsel had "analyzed" the Claimants' arbitration demands and determined that "more than 30% of Keller Postman's claimants have **never** been registered users."  (Dkt. 1 ¶ 50.a (emphasis in original)).

This was a critical allegation, because it was the only concrete, non-conclusory factual allegation to support broader allegations attacking Keller Postman.  Tubi repeatedly asserted "on information and belief" that Keller Postman failed to conduct adequate investigation into Claimants' claims.  (Dkt. 1 ¶¶ 3, 17, 20, 27.a.iii, 29, 42, 55, 62).  But Tubi and its counsel have no basis to assess the confidential investigation conducted by Keller Postman, and they cannot simply make up accusations in a Complaint and avoid the requirements of Rule 11 by including the phrase "on information and belief."  *Goldman v. Barrett*, 825 F. App'x 35, 38–39 (2d Cir. 2020) (use of phrase "on information and belief" does not "relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances" (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment)).  Tubi's false allegation that "more than 30% of Keller Postman's claimants have never been registered users" was a key predicate for its broader (and equally false) allegation that Keller Postman failed to conduct an adequate investigation into its clients' claims.

On July 31, 2024, Keller Postman filed a notice of intention to file a motion to dismiss the complaint with prejudice.  (Dkt. 9).  Tubi responded on August 7, (Dkt. 12), and the Court set a

pre-motion conference for September 4th.  At the conference, the Court explained that its purpose was to apprise both parties of the Court's "initial impressions," "concerns," and "questions" about the motion and to "hopefully . . . make[ the parties'] briefing more effective."  (Dkt. 13 at 4:13–19).  In particular, the Court noted its concern that proving Tubi's allegations about Keller Postman's alleged failure to obtain informed consent to its legal strategies—allegations crucial to Tubi's tort theory—would be impossible "without invading [attorney-client] privilege."  (*Id.* at 5:21–23); *see also* (*id.* at 9:17–21) ("They can't ask them any questions about communications they had with a client or how they got the informed consent or what they asked for in the informed consent.").

Keller Postman filed its motion to dismiss on September 25.  (Dkt. 14).  Tubi filed an opposition, (Dkt. 18), but it chose to forego its right to amend its complaint, which it could have done any time on or before October 16.  Fed. R. Civ. P. 15(a)(1)(B).  The motion to dismiss is now fully briefed, and oral argument is set to take place on December 19.

Since the Complaint was filed, Keller Postman has uncovered evidence suggesting that Tubi's allegation about being unable to find Claimant accounts was false.  This evidence came to light because Tubi settled an unrelated class action in Illinois state court—one alleging claims under the federal Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 *et seq.*—and attempted to include Claimants' separate Unruh Act claims in the scope of the release.  *See* Ex. 1, Settlement Agreement, *Gregory v. Tubi, Inc.*, No. 24-LA-209 (Ill. 17th Jud. Cir. Ct. July 26, 2024), at 8–9 (§ 1.22) (defining "Released Claims" to include "Unruh Civil Rights Act" claims).  After learning of this attempt to circumvent Tubi's Terms (which expressly promised Claimants that Tubi would <u>not</u> participate in a class action), four Claimants petitioned to intervene and asked the court to exclude Unruh Act claims from the settlement.  *See* Ex. 2, Petition to Intervene, *Gregory*

*v. Tubi*, No. 24-LA-209 (Ill. 17th Jud. Cir. Ct. Oct. 7, 2024), at 1–3.  In responding to the petition, Tubi's counsel averred that one of the four Claimant-petitioners, Marvin Cheng, did not "have an account registered to the email address he listed in his arbitration demand."  Ex. 3, Affidavit of Brandon D. Fox in Support of Tubi's Opposition to Petition to Intervene ("Fox Aff."), *Gregory v. Tubi, Inc.*, No. 24-LA-209 (Ill. 17th Jud. Cir. Ct. Oct. 30, 2024), ¶ 20; *see also* Ex. 4, Tubi's Opposition to Petition to Intervene, *Gregory v. Tubi, Inc.*, No. 24-LA-209 (Ill. 17th Jud. Cir. Ct. Oct. 30, 2024), at 5 ("Mr. Cheng never registered an account using the email address he provided in his demand.").  This claim was and is false.  Mr. Cheng had indeed created an account using the email address listed in his arbitration demand, and he had the confirmation email to prove it.  Ex. 5, Email from Tubi to Marvin Cheng, dated Oct. 17, 2020.

Keller Postman had repeatedly disputed Tubi's claim that over 30 percent of the Claimants lacked registered accounts and offered to exchange information with Tubi to resolve this dispute before this case was filed. (Dkt. 14-4 at 6).  Indeed, Keller Postman had offered to do so long before any arbitration costs would be paid.  (*Id.*).  But Tubi consistently refused.  After Tubi filed a factually incorrect affidavit in *Gregory*, Keller Postman wrote to Tubi's counsel to correct the false claim.  Noting the "significant concerns" the error raised "about whether [Tubi's counsel's] search of Tubi's records was reasonably calculated to find Keller Postman's clients' accounts or was instead engineered to be underinclusive so as to support the false narrative Tubi has now presented to multiple tribunals," Keller Postman also asked Tubi's counsel to explain how it conducted its search for Mr. Cheng and the other Claimants.  Ex. 6, Letter from Warren Postman to Brandon Fox, dated Nov. 1, 2024, at 2.  The letter also reiterated that these concerns had been raised to Tubi's counsel as early as April 29, 2024—more than a month before Tubi filed the Complaint.  *Id.* at 1.

Tubi's counsel initially stonewalled.  His first response did not dispute the falsity of the specific factual representation he made about Mr. Cheng.  Ex. 7, Letter from Brandon Fox to Warren Postman.  Nor did he attempt to defend the specific allegation in the Complaint that "more than 30% of Keller Postman's claimants have *never* been registered users based on the email addresses Keller Postman provided to JAMS."  (Dkt. 1 ¶ 50.a).  But he refused to offer any explanation for the error and instead attacked the merits of Mr. Cheng's underlying claim.

About two weeks later, Tubi's counsel apparently decided that the allegations in the Complaint could not be defended and moved to amend the Complaint.  (Dkt. 22).  As the Proposed Amended Complaint reveals, Tubi in fact stores user accounts in two separate databases. (Dkt. 22-1 ¶¶ 55–56).  But when looking for the accounts of Arbitration Claimants, Tubi's counsel searched only one.  *See* (*id.*)  Assuming charitably that it was not intentional, the exclusion is at a minimum unreasonable.  *Cf. Nycomed US Inc. v. Glenmark Generics Ltd.*, No. 08-cv-5023, 2010 WL 3173785, at *1, 4–11 (E.D.N.Y. Aug. 11, 2010) (imposing monetary sanctions for attorney's failure to identify document that was stored in separate database and describing as "inexcusable" the "excuse" that the attorney simply overlooked the database).

Having implicitly conceded that allegations in its initial complaint were false, Tubi's counsel curiously attempted to make up for or distract from this admission by revealing that it had engaged in a pattern of interrogating Keller Postman clients in flagrant violation of the prohibition on an attorney contacting any "person" she knows to be represented in a "matter."  (Dkt. 22-1 ¶¶ 77–79).  Out of over 23,000 Keller Postman clients who filed arbitration demands, a minute fraction, far less than 1%, have elected to withdraw their arbitration demands.  (*Id*. ¶ 77).  Applicable rules are crystal clear that Tubi's counsel (1) was charged with the knowledge the Keller Postman represents a client when Keller Postman filed the client's arbitration demand and

(2) cannot treat the mere withdrawal of a demand (*i.e.*, a pleading) as the end of the "matter".  *See* Mot. to Disqualify at 6–9, 20–24.  And indeed, Keller Postman's standard practice is to continue representing its clients in connection with their claims after clients withdraw their arbitration demands.  *See* Ex. 8, Dec. 9, 2024 Declaration of Warren Postman ("Postman Decl.") ¶¶ 4–6.

Nonetheless, Tubi's counsel dispatched a "former FBI Special Agent" to interrogate Claimants who withdrew their arbitration demands and to pressure them into signing declarations with demonstrably false information.  (Dkt. 22 at 2).  The large majority of these Claimants refused Tubi's request that they sign a forced declaration disavowing Keller Postman's efforts on their behalf.  However, Tubi's "investigator" managed to intimidate six Claimants into signing declarations incorrectly denying knowledge of their claims or their relationships with Keller Postman.  (*Id.* at 2–4).  The details of this misconduct are spelled out fully in Keller Postman's Motion to Disqualify, but to note just a few examples: one Keller Postman client reports that the investigator showed up repeatedly at her home in a dark suit, mentioned "the FBI," and refused to leave after being asked to.  Ex. 9, Dec. 6, 2024 Declaration of Lumeah Deschamps.  The investigator hounded another client who was sick with a chronic condition, saying that if the client signed the declaration "this can be over."  Ex. 10, Dec. 6, 2024 Declaration of Deneisha Ellis.  Other clients report that the investigator simply stated that she was "with the attorneys," causing them to believe that she was acting on behalf of Keller Postman (their attorneys) and they needed to sign additional paperwork to effectuate the withdrawal of their demand.  Ex. 11, Dec. 6, 2024 Declaration of Monique Dudley.

Tubi's Motion and Proposed Amended Complaint assiduously avoid mentioning when these contacts began, but the signature dates on the declarations reveal that all but one has been in Tubi's possession since early July.  *See* (Dkt. 22-24 at 3); (Dkt. 22-25 at 3); (Dkt. 22-26 at 3);

(Dkt. 22-27 at 3); (Dkt. 22-28 at 3).  That is months before Keller Postman filed its motion to dismiss, months before Tubi's amendment right under Rule 15(a)(1)(B) expired, and months before Tubi proposed to introduce new allegations based on these contacts in the instant motion.

Perhaps Tubi's counsel did not include this information at first because it feared having to defend the propriety of its conduct.  But whatever the reason, Tubi's delay suggests tactical gamesmanship that should not be rewarded.  Moreover, Jenner's initial defense of its conduct is facially meritless.  When Tubi finally disclosed its conduct on the eve of filing its motion to amend the Complaint, Keller Postman responded that Jenner was violating California Rule of Professional Conduct 4.2, which states that "a lawyer shall not communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter."  Jenner responded that it was permitted to contact the clients because, although Jenner knew about the Claimants' claims only through Keller Postman, Keller Postman had withdrawn their arbitration demands without prejudice.  According to Mr. Fox, Jenner was entitled to assume that "[a]ny attorney-client relationship ended once the [demands] were withdrawn."  Ex. 12, Tubi's Surreply Opposing Objections and Requests for Exclusion, *Gregory v. Tubi, Inc.*, No. 24-LA-209 (Ill. 17th Jud. Cir. Ct. Dec. 3, 2024), at 11.

Jenner's response ignores what every lawyer knows: clients can be represented by counsel in a "matter" regardless of whether a *pleading* has been filed or withdrawn.  It also ignores that the California Rules of Professional Conduct were amended in 2018 specifically to *reject* the argument that the prohibition on contacting a represented party automatically ends when a person is no longer a party to litigation.  *See* Cal. R. Prof. Conduct 4.2 cmt. 2 ("'Subject of the representation,' 'matter,' and 'person' are not limited to a litigation context.  This rule applies to communications with any person, whether or not a party to a formal adjudicative proceeding,

7

contract or negotiation, who is represented by counsel concerning the matter to which the communication relates."); *see also* Proposed Rule of Professional Conduct 4.2, Executive Summary[1] at 1 (explaining that the text of the rule was changed to cover any "person"—rather than the prior term "party"—to prevent the result in *In re Dale*, No. 00-O-14350, 2005 WL 1389226 (Cal. Bar Ct. May 6, 2005), which held that counsel could contact a represented party once the proceedings in which counsel appeared for the client had ended).

Where an attorney knows that a representation has been commenced but suspects that it may have concluded, the attorney must check with opposing counsel or seek leave to contact the clients from a court. Mot. to Disqualify at 9. Rule 4.2 is governed by an objective standard, and any reasonable lawyer would know that the mere *withdrawal of a pleading* does not entitle the lawyer to contact the opposing party outside the presence of their counsel. *Id*. at 7–9. The investigator's misleading and intimidating conduct raises still other ethical issues. Indeed, even if the Claimants were not represented, Rule 4.3 would still have prohibited the investigator from engaging in misleading or intimidating conduct or obtaining confidential information about the prior representation from the Claimants. *Id*. at 10–18. The investigator violated both these commands. She misled clients into thinking she was with the FBI or affiliated with Keller Postman and pressured them to sign a declaration after they initially demurred. *Id*. at 14–18. And she obtained confidential information about Keller Postman's representations, which should not be surprising given that this was Jenner's obvious goal in directing the interrogations. *Id*. at 24–26.

The proper sanction for a willful violation of such elementary ethical prohibitions is disqualification, and Keller Postman has filed a separate motion seeking that sanction. *See* Mot.

---

[1]   *Available at* https://www.calbar.ca.gov/portals/0/documents/rules/rrc2014/final_rules/rrc2-4.2_[2-100]-all.pdf (last accessed Dec. 9, 2024).

to Disqualify at 28–32.  But in all events, Tubi should not be allowed to file an amended complaint that contains the fruits of such an ethical violation.  *Shoney's Inc. v. Lewis*, 875 S.W.2d 514, 516–17 (Ky. 1994) (affirming suppression of statements obtained in violation of anti-contact rule) (collecting cases).

The "two primary additions" embodied in the Proposed Amended Complaint, (Dkt. 22 at 2), reflect Tubi's effort to cover its error and benefit from its counsel's misdeeds.  Tubi's proposed "addition . . . [of] factual material regarding its allegation that Keller Postman filed fraudulent arbitration demands," (*id.* at 4), actually aims to remedy misrepresentations in the Complaint.  And its proposed "descri[ption of] how it hired a former FBI Special Agent . . . to interview former claimants," (*id*. at 2), is a jarringly frank account of a series of sanctionable ethical violations.

## ARGUMENT

The Court should deny Tubi's motion for leave to file the Proposed Amended Complaint. "[T]he decision whether to permit amendment is 'vested in the sound discretion of the trial court.'" *Mowrer v. U.S. Dep't of Transp.*, 14 F.4th 723, 732 (D.C. Cir. 2021) (quoting *Doe v. McMillan*, 566 F.2d 713, 720 (D.C. Cir. 1977)).  And Rule 15(a)(2)'s direction to give leave "freely" applies only "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Supreme Court has endorsed a number of specific grounds for denying leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Denial is warranted here on at least two of those grounds.

First, there has been undue delay.  Tubi's proposed additions consist almost entirely of information it obtained months ago and which it could have included in its Complaint or in by-right amendments up to three weeks after serving the Complaint, Fed. R. Civ. P. 15(a)(1)(A), or

being served with Keller Postman's motion to dismiss, *id.* 15(a)(1)(B).  But Tubi chose to forego those opportunities and to let briefing on Keller Postman's motion to dismiss play out.  Having seen the full briefing on that motion, Tubi apparently does not like its chances and would prefer to forestall a ruling by amending its Complaint and triggering another round of briefing.  Its delay in seeking to amend is "undue" and should not be rewarded.

Second, Tubi's amendment would be futile.  In its motion to dismiss, Keller Postman raised three fatal flaws in Tubi's tortious interference theory.  (Dkt. 14-1 at 12–14).  Tubi's proposed amendments do nothing to cure these flaws.  "[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss," and the Court should do so here.  *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010).

The Court also should not allow Tubi's motion to delay the hearing on the pending motion to dismiss.  The motion to dismiss has been fully briefed for weeks.  It was initially scheduled for a hearing on November 22, and is now scheduled to be heard on December 19, a mere three days after this motion is scheduled to be fully briefed.  The parties should have the opportunity to present their arguments to the Court at that hearing, and the Court can consider Tubi's motion to amend either after ruling on the motion to dismiss or simultaneously, as it considers whether to dismiss with or without prejudice.  *See Barnes v. District of Columbia*, 42 F. Supp. 3d 111, 118–19 (D.D.C. 2014).

I.    **Tubi Has Demonstrated Undue Delay in Seeking Leave to Amend the Complaint.**

The D.C. Circuit has "consistently held that undue delay is a valid ground for denying leave to amend especially when the plaintiff offers no good reason for the delay."  *Mowrer*, 14 F.4th at 732 (citations omitted).  That is precisely the case here.  The content of the "two primary additions" proposed by Tubi, (Dkt. 22 at 2), has been known or knowable for months and could have been added by right after Keller Postman served its motion to dismiss or even incorporated into the

Complaint in the first instance. Tubi offers no reason at all, let alone a good one, for its choice to forego those opportunities and instead bring this motion on the eve of the Court's hearing on the motion to dismiss. (*Id.* at 1–5). To the contrary, Tubi blithely dismisses the wastefulness of forcing the parties and the Court to reopen briefing on Keller Postman's motion. (*Id.* at 7). And Tubi's motion comes after it participated in pre-motion procedures designed for the very purpose of preventing inefficient last-minute requests like this one. (Dkt. 13 at 4:9–19). Tubi has therefore demonstrated undue delay in seeking to amend its Complaint, and its motion should be denied for this independent reason.

Tubi's first "primary [proposed] addition" is an account of its efforts to track down and interrogate certain Claimants in flagrant violation of applicable ethics rules. (Dkt. 22 at 2); *see* (Dkt. 22-1 ¶¶ 77–80). The egregiousness of this undertaking is described in full in Keller Postman's separate motion to sanction Tubi's counsel. Mot. to Disqualify at 14–18. But as relevant here, all but one of these interrogations took place in July, long before Keller Postman filed its motion to dismiss and even longer before the October 16 expiry of Tubi's window to amend its complaint by right under Rule 15(a)(1)(B). *See* (Dkt. 22-24 at 3); (Dkt. 22-25 at 3); (Dkt. 22-26 at 3); (Dkt. 22-27 at 3); (Dkt. 22-28 at 3). Tubi therefore had ample opportunity to add these allegations but chose to withhold them until it decided that proposing them would achieve its tactical goal of forestalling a ruling on Keller Postman's motion to dismiss.

So too with Tubi's "second primary addition." (Dkt. 22 at 4). Tubi's allegation that "more than 30% of Keller Postman's claimants have ***never*** been registered users based on the email addresses provided to JAMS," (Dkt. 1 ¶ 50.a), first appeared in an April 25, 2024 letter to Keller Postman, (Dkt. 1, Ex. 17 at 221). Keller Postman replied four days later noting its concern that Tubi may have "conducted an incomplete search for arbitration claimants" to support a narrative

that Keller Postman "fil[ed] improper demands." (Dkt. 14-4 at 6). There is no indication that Tubi investigated the representation any further before reprinting it verbatim in the Complaint. (Dkt. 1 ¶ 50.a). Instead, it was only in "November 2024," after being confronted with indisputable evidence that the initial search was underinclusive, that Tubi "further analyzed the claims" and confirmed what Keller Postman had warned of all along. (Dkt. 22-1 ¶ 56).

Tubi's proposed amendments on this point reflect an attempt to remedy and justify the recklessly false statement it made even after being warned that the statement was probably false. But Tubi has had abundant opportunity to investigate this specific factual claim. Indeed, if Tubi or its counsel had "conducted even a simple inquiry," (Dkt. 22-1 ¶ 57), it could have avoided introducing this predictably false statement into the Complaint in the first instance. "But [Tubi] did not engage in even such minimal diligence," (*Id.*), and it now aims to scuttle months of briefing.

The unreasonableness of Tubi's delay in advancing its proposed amendments is even more apparent when considered in light of this Court's extensive pre-motion procedures, which are meant to give the parties an opportunity to air the issues raised by a motion before it is even allowed to be filed. The Court spent over an hour discussing these issues with the parties, and Tubi then had six weeks to consider potential amendments responsive to the Court's expressed views and Keller Postman's arguments for dismissal. Ensuring that "Plaintiff would amend prior to service of Defendants' motions" is "the very purpose for which pre-motion conferences are designed." *Volunteer Fire Ass'n of Tappan, Inc. v. County of Rockland*, No. 09-cv-4622, 2010 WL 4968247, at *5 & n.9 (S.D.N.Y. Nov. 24, 2010). Tubi's failure to avail itself of that opportunity should weigh heavily against granting its belated request for leave to amend. *See id.; Honickman for Estate of Goldstein v. BLOM Bank SAL*, 432 F. Supp. 3d 253, 270–71 (E.D.N.Y. 2020) (denying

leave to amend where plaintiff "reject[ed] . . . the opportunity to amend their pleading at the pre-motion conference").

Attempting to distract from this context, Tubi points the Court to the "stage of the case." (Dkt. 22 at 6).  But "[d]eterminations of undue delay are not based solely on the time elapsed between the filing of the complaint and the request for leave to amend." *Wilcox v. Georgetown Univ.*, No. 18-cv-0422, 2023 WL 2734224, at *8 (D.D.C. Mar. 31, 2023).[2]  Rather, Tubi's delay is undue because it chose to forego many more opportune moments to amend and now seeks to do so when amendment would produce inefficiency and waste.  Its motion should therefore be denied.

The Court should independently deny the motion to amend because it contains the fruit of serious ethical violations by Tubi's counsel.  As explained further in Keller Postman's Motion to Disqualify, these violations warrant disqualification of Jenner & Block as well as a bar on the use in this case of any information obtained from the violations.  To the extent this latter remedy is granted, it would likewise bar Tubi from filing the Proposed Amended Complaint, which features the fruits of Jenner's unethical conduct.

---

[2] Tubi also cites *Ashbourne v. Hansberry*, 894 F.3d 298 (D.C. Cir. 2018), for the proposition that "when the case is at a 'very early procedural juncture,' an amendment is 'presumptively available.'"  (Dkt. 22 at 6 (quoting *Ashbourne*, 894 F.3d at 303)).  But Tubi's selective quotation misrepresents that court's statement, which was actually that "the *addition of new claims* was presumptively permissible" given the case's "very early procedural juncture."  894 F.3d at 303 (emphasis added).  Tubi is not seeking to add claims but rather to "clarify and bolster its allegations," (Dkt. 22 at 6), and the D.C. Circuit has elsewhere held that denial of leave on undue delay grounds is *especially* appropriate where a plaintiff seeks mainly to "add new factual allegations." *Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999).  Moreover, the "procedural juncture" in *Ashbourne* was considerably earlier than the one at which this case currently sits.  No motion to dismiss had been filed and the plaintiff had not yet even consolidated all of her claims into a single complaint. *See Ashbourne*, 894 F.3d at 300–01.

II.     **Amendment Would Be Futile Because Tubi's Proposed Amended Complaint Cures None of the Complaint's Fatal Flaws.**

"[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d at 218; *see James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). Courts in this circuit routinely deny motions to amend on this ground, and the Court should do so here. *See, e.g., Williams v. Ellerbe*, 317 F. Supp. 3d 144, 147–49 (D.D.C. 2018). In its motion to dismiss, Keller Postman showed that Tubi's Complaint "does not plausibly allege a breach of contract[;]" "does not allege any damages flowing from the purported breach[;]" and "does not allege any interest that Keller Postman . . . pursued for its sole personal benefit independent of its clients' interests," as is necessary to overcome D.C. law's attorney litigation privilege. (Dkt. 19. at 1). Each of these flaws is independently fatal to the Complaint because breach and damages are essential elements of the tort of tortious interference with contract under D.C. law, *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 326 (D.C. 2008), and because the attorney litigation privilege immunizes Keller Postman from liability, *see Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper, Chartered*, 935 A.2d 362, 381 (D.C. 2007). Because Tubi's proposed amendments do nothing to cure these flaws, the proposed Amended Complaint "would still fail to state a cognizable claim against" Keller Postman.[3] *Williams*, 317 F. Supp. 3d at 149. Tubi's motion should therefore be denied as futile.

---

[3] Tubi has conceded that its declaratory relief claims are derivative of its tortious interference claim. (Dkt. 12 at 4); (Dkt. 14 at 4); (Dkt. 19 at 19–20). The proposed Amended Complaint fails to cure the fatal flaws in its tortious interference claim, and the proposed amendments to its prayer for declaratory relief do not de-link the two claims. (Dkt. 22-1 ¶¶ 92–97).

### A.    Tubi's Proposed Amended Complaint Still Fails to Allege Breach.

In its Complaint, Tubi alleged that Claimants breached Tubi's Terms of Service (the "Terms") in exactly one way: by initiating arbitrations at JAMS without first giving Tubi 45 days' advance notice under Section 10(7). (Dkt. 1 ¶ 52). But as Keller Postman explained in its motion to dismiss, Claimants challenged the enforceability of these provisions—and they did so exactly as required by the Terms' delegation clause: by initiating arbitrations with JAMS. (Dkt. 14-1 at 15–17); (Dkt. 1, Ex. 15 at 208); (*id*. Ex. 8 at 129–30 (§§ 10(2), 10(6))). Put differently, because Section 10(7) is unenforceable, Claimants' Unruh Act claims were immediately arbitrable under the Terms. Tubi believes that Section 10(7) *is* enforceable and that the Unruh Act claims are therefore not arbitrable until Claimants comply with it. But Section 10(2) of the Terms (the delegation clause) requires "disputes over arbitrability" like this one to be "resolved by the arbitrator." (Dkt. 1, Ex. 8 at 130 (§ 10(2)). Claimants therefore did not breach—or fail to perform—the Terms by obeying the delegation clause and taking the dispute over Section 10(7) to JAMS.

Each of Tubi's arguments to the contrary are meritless. *See generally* (Dkt. 19 at 3–8). Tubi's bizarre claim that Claimants did not dispute the enforceability of Section 10(7), (Dkt. 18 at 13–14), is flatly contradicted by the demands themselves, (Dkt. 1, Ex. 15 at 208). And there is no support in the Terms, JAMS rules, or relevant contract law for Tubi's suggestions that Claimants were required to challenge Section 10(7)'s enforceability via freestanding demands for declaratory relief. (Dkt. 19 at 6–7). Claimants were entitled under the delegation clause to challenge Section 10(7) and they brought that challenge precisely as the Terms dictated.[4]

---

[4] As Keller Postman explained, Tubi is also wrong to describe the argument that Claimants complied with the Terms as an "affirmative defense." (Dkt. 19 at 5). It is Tubi's burden to allege facts beyond mere "[t]hreadbare recital[s]" plausibly showing that the essential elements of its

Tubi's failure to allege breach in the Complaint is a sufficient reason to dismiss it, and Tubi's proposed amendments do nothing to cure that failure. The proposed Amended Complaint leaves the Complaint's theory of breach entirely unchanged. *Compare* (Dkt. 1 ¶ 52) *with* (Dkt. 22-1 ¶ 59). And it adds no facts or legal theories that would "convert compliance with a clear delegation clause into a viable theory of breach." (Dkt. 19 at 1). The proposed Amendment Complaint would therefore "still fail to state a cognizable claim." *Williams*, 317 F. Supp. 3d at 149. Leave to amend would be futile and should be denied.

### B. Tubi's Proposed Amended Complaint Still Fails to Allege Damages Flowing from the Alleged Breach.

To state a tortious interference claim, Tubi must allege "damages resulting from" the alleged breach. *Murray*, 953 A.2d at 325. In the Complaint, Tubi alleges that it was damaged by having "to pay ongoing fees to the arbitrator and to JAMS, along with attorneys' fees that it would not have had to pay but for Keller Postman's tortious interference." (Dkt. 1 ¶ 68). But Tubi may not recover its attorneys' fees because the "wrongful involvement in litigation" exception to the American Rule does not apply here. (Dkt. 19 at 9 n.6) (citing *Rosenthal v. Sonnenschein, Nath & Rosenthal, LLP*, 985 A.2d 443, 458–60 (D.C. 2009)). Tubi is therefore left to rely for damages on the roughly $2,000 in filing fees it paid to JAMS. But Tubi has failed to allege any facts supporting the conclusion that these costs would have been different had Claimants provided their demands 45 days earlier. That is, Tubi cannot show that it would have avoided those costs "but for" the alleged breach. (Dkt. 19 at 8–10).

---

claim are met. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claimants complied with the Terms by obeying their delegation clause, so Tubi cannot make out an indispensable element of a tortious interference claim, whether formulated as "breach" or "failure of performance." (Dkt. 19 at 6–7).

In its opposition to Keller Postman's motion to dismiss, Tubi asserted that it "has been forced" to pay "costs associated with defending the JAMS arbitration . . . [and with] litigating the arbitrability of Keller Postman's claims" "[*b*]*ecause* Keller Postman caused its clients to breach." (Dkt. 18 at 20) (emphasis added).  But Tubi is facing those costs "because" Claimants filed arbitration demands *at all*, not because it filed them 45 days earlier than Tubi alleges Section 10(7) required.  And "it is not a breach of the Terms to file legal claims."  (Dkt. 14-1 at 19).

Tubi tries to connect its alleged harm to Claimants' purported breach by (1) arguing that Section 10(7) required Claimants not just to provide 45 days' notice but also to provide the amount of detail that fits with Tubi's view of the Terms and then (2) speculating that Tubi's detail requirements would have left some Claimants unable to file demands.  (Dkt. 18 at 21–22).  But this argument again ignores the operation of the delegation clause, and this Court need not accept misstatements of law simply because they are dressed up as factual allegations in a complaint.  *Bell Atl. v. Twombly*, 550 U.S. 544, 556–57 (2007).  Claimants believe the information they provided met the relevant arbitral pleading standard, and Tubi disputes that.  (Dkt. 19 at 4–5).  But the delegation clause allows Claimants to *raise that dispute in arbitration*.  Tubi's argument that the demands lack sufficient information is just another threshold dispute of arbitrability.  Under the delegation clause, that is a reason that the arbitrations *would* have proceeded, not a basis to argue that they could not have.  (Dkt. 19 at 8–9).

More fundamentally, Tubi has no answer to the fact that neither Claimants nor JAMS can force Tubi to pay costs merely because demands were filed.  (Dkt. 19 at 8–9).  Tubi could have refused to pay any fees and in fact ignored the arbitration demands from Claimants entirely.  Many arbitration defendants do just that.  *See, e.g.*, *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 613 (7th Cir. 2024).  Claimants would then have had to file a motion to compel arbitration.  *See*

*id.* If Tubi is correct that Section 10(7) is an enforceable precondition to arbitration—and that it somehow trumps the Terms' delegation clause—the motion would have been denied and Tubi would not have had to pay any JAMS fees. As Keller Postman has explained, Tubi's payment of fees *was Tubi's choice*; it did not "result[] from" the alleged breach, and the Complaint therefore fails for this independent reason. *Murray*, 953 A.2d at 325.

Neither of Tubi's "two primary additions," (Dkt. 22 at 2), supply the missing link between the purported breach and Tubi's alleged damages. Tubi's second stab at its false assertion that many of the Claimants' claims are frivolous, (Dkt. 22-1 ¶¶ 55–57), still fails to explain how Tubi's costs would have been any different if Claimants had provided the same information they included in their demands any earlier. Recall that Tubi has only received one JAMS invoice—for $2,000— and it received it months after Claimants submitted their demands. (Dkt. 1 ¶ 68); (Dkt. 22-1 ¶ 76); (Dkt. 14-7). Tubi's addition of its flagrantly unethical contacts with six withdrawn Claimants is no more helpful. (Dkt. 22-1 ¶¶ 77–80). Nor are its self-serving criticisms of Claimants' legal strategy in arbitration, (*id.* ¶¶ 31, 75), or its redundant and still baseless assertions about Keller Postman's communications with its clients, (*id.* ¶ 36). At bottom, the proposed Amended Complaint contains the same flaw as the Complaint: it fails to allege *facts*—rather than self-serving legal labels—that support the conclusion that the costs it claims as damages resulted from the purported breach. For that reason, the proposed Amended Complaint would "still fail to state a cognizable claim" of tortious interference, and amendment would therefore be futile. *Williams*, 317 F. Supp. 3d at 149.

## C. Tubi's Proposed Amended Complaint Still Fails to Allege Facts Plausibly Showing that Keller Postman's Legal Advice Triggered the Narrow Exception to the Litigation Privilege

As a general rule, attorneys who "advise[] or assist[] a client to make or break a contract" are immune from suit by non-clients for tortious interference with contract. *Shenandoah Assocs.*

*Ltd. v. Tirana*, 322 F. Supp. 2d 6, 10 (D.D.C. 2004).  There is a narrow exception to this rule where the attorney pursued an interest independent of the client's "for the attorney's *sole* personal benefit."  *Goldschmidt*, 935 A.2d at 381.  As Keller Postman explained, the Complaint "alleges one, and only one, form of benefit that Keller Postman was seeking by advising [the filing timing that Tubi claims constituted breach]: pecuniary gain from the matters themselves."  (Dkt. 14-1 at 22).  But because Keller Postman's contingency fee model means that it can further that pecuniary interest only by "obtaining more money for its clients," its interest is definitionally "*dependent* on, and not 'independent of' its clients' interests."  (*Id.* at 22–23) (quoting *Nave v. Newman*, 140 A.3d 450, 456 (D.C. 2016)).  This fundamental flaw in the Complaint could not be overcome by Tubi's "bare assertions," "[e]pithets and legal labels," which the Court need not accept as true.  (*Id.* at 22 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009))).  To the extent the Complaint contained facts, those facts "*confirm*" that Keller Postman was acting to further Claimants' interests.  (Dkt. 19 at 14).  Because the Complaint failed to allege facts that would overcome Keller Postman's attorney litigation privilege, Tubi failed to state a claim.

The proposed Amended Complaint suffers from this same basic flaw.  Tubi's proposed amendments to its claims that some demands are frivolous *walks back* its original allegations. *Compare* (Dkt. 1 ¶ 50) *with* (Dkt. 22-1 ¶¶ 55–57).  And its discussion of its inappropriate interrogations of represented parties does nothing more than double down on its longstanding assertions that some claims are "frivolous," *see, e.g.*, (Dkt. 1 ¶ 81), and that Keller Postman "failed to obtain informed consent" from its clients, (Dkt. 18 at 26).  But Keller Postman has already explained why these allegations fail to overcome the attorney litigation privilege.  (Dkt. 19 at 16–18).  Even if the Court accepts as true that some claims are not meritorious, Tubi still cannot explain how Keller Postman would benefit independently from those claims' failure.  (*Id.*).  Nor

does "the failure to obtain informed consent," even if taken as true, answer the question of how Keller Postman would benefit in the same state of the world where Claimants suffer. (*Id.*). Because the proposed Amended Complaint fails—just like the Complaint—to allege facts showing an interest on the part of Keller Postman to harm Tubi for its "*sole* personal benefit," independent of any interest in serving its clients, *Goldschmidt*, 953 A.2d at 381, it "still fail[s] to state a cognizable claim," and Tubi should not be permitted to file it. *Williams*, 317 F. Supp. 3d at 149.

### III.    The Court Should Not Allow Tubi to Delay the Scheduled Hearing on the Pending Motion to Dismiss.

Tubi's motion for leave to amend is timed to scuttle months of briefing and an imminent hearing on the motion to dismiss. The Court should deny it for undue delay and futility. But regardless of how the Court rules, it need not decide prior to the hearing scheduled for December 19, 2024, and should not delay that hearing. Keller Postman should have an opportunity to present arguments on the motion to dismiss, and those arguments will also inform the Court's consideration of this motion. *See Williams*, 317 F. Supp. 3d at 147 ("The standard for deciding whether to deny leave due to futility is . . . 'for practical purposes ... identical to [the standard governing] a Rule 12(b)(6)' motion to dismiss." (quoting *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d at 215–16)). And the Court may rule on Tubi's motion for leave to amend *after* resolving the motion to dismiss or consider it as part of its analysis of whether to dismiss with or without prejudice. *See Barnes*, 42 F. Supp. 3d at 118–19.

### CONCLUSION

Tubi moves for leave to amend on the eve of the Court's hearing on Keller Postman's motion to dismiss, and it does so after passing up numerous opportunities to amend by right. Its proposed amendments would do nothing to cure the fatal flaws in its Complaint. Its motion should

therefore be denied for undue delay and futility.  In any event, the hearing on Keller Postman's

motion to dismiss should go forward as planned on December 19, 2024.

Dated:  December 9, 2024                                  Respectfully submitted,

                                                         KELLER POSTMAN LLC

                                         By:     /s/ Warren D. Postman
                                                 Warren D. Postman (Bar ID 995083)
                                                 Albert Y. Pak (Bar ID 888314242)
                                                 Fred Messner (admitted *pro hac vice*)
                                                 1101 Connecticut Avenue N.W.
                                                 Suite 1100
                                                 Washington, DC 20036
                                                 (202) 918-1123
                                                 wdp@kellerpostman.com
                                                 albert.pak@kellerpostman.com
                                                 fred.messner@kellerpostman.com

                                                 Kiran N. Bhat (Bar ID 1021898)
                                                 2333 Ponce De Leon Boulevard
                                                 Suite 100
                                                 Coral Gables, FL 33134
                                                 (305) 845-4684
                                                 kiran.bhat@kellerpostman.com

                                                 *Attorneys for Defendant*