UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TUBI, INC., <br>          Plaintiff, <br><br> v. <br><br> KELLER POSTMAN LLC, <br>          Defendant. | Civil Action No. 1:24-cv-01616-ACR <br><br> Judge Ana C. Reyes |

**PLAINTIFF TUBI, INC.'S STATUS REPORT
AND REQUEST FOR STATUS CONFERENCE**

JENNER & BLOCK LLP

Brandon D. Fox (*pro hac vice*)
Kelly M. Morrison (D.C. Bar No. 1046293)
Sati Harutyunyan (D.C. Bar No. 1049009)
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
bfox@jenner.com
kmorrison@jenner.com
sharutyunyan@jenner.com

*Attorneys for Plaintiff Tubi, Inc.*

March 25, 2025

## INDEX OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| A | Hearing Transcript, *Tubi v. Keller Postman* (Dec. 19, 2024) |
| B | Joint Stipulation, *Gregory v. Tubi, Inc.* (Dec. 23, 2024) |
| C | Order Granting Stipulation, *Gregory v. Tubi, Inc.* (Dec. 26, 2024) |
| D | Emails Between W. Postman, B. Fox, and M. Levington, JAMS (Dec. 26, 2024-Jan. 16, 2025) |
| E | Hearing Transcript, *Gregory v. Tubi, Inc.* (Dec. 4, 2024) |
| F | Sample Attorney-Signed Opt-Out, Attached as Exhibit R to Affidavit of W. Postman re Reply in Support of Petition to Intervene, *Gregory v. Tubi, Inc.* (Nov. 12, 2024) |
| G | Order on Petition to Intervene, *Gregory v. Tubi, Inc.* (Dec. 31, 2024) |
| H | Email from C. Small to W. Postman, et al. (Feb. 4, 2025) |
| I | Email from E. Ames to M. Levington, JAMS (Feb. 7, 2025) |
| J | Letter from N. Trutanich to W. Postman (Mar. 6, 2025) |
| K | Letter from B. Fox to W. Postman (Mar. 7, 2025) |
| L | Notice of Appeal, *Gregory v. Tubi, Inc.* (Feb. 24, 2025) (excluding exhibits) |
| M | Letter from W. Postman to B. Fox (Mar. 13, 2025) |
| N | Letter from W. Postman to B. Fox (Mar. 20, 2025) (excluding exhibits) |
| O | Sample Amended Demand for Arbitration (Mar. 13, 2025) (excluding exhibits) |

When Tubi and Keller Postman last appeared, the Court brokered a broad procedural resolution. The agreement was to provide an "efficient way forward in the [mass] arbitration" pending before JAMS and to narrow the disputes occurring in multiple matters pending in federal and state court. Ex. A, Hr'g Tr. at 42:8-13 (Dec. 19, 2024). The agreement was to bind Tubi, Keller Postman, and Keller Postman's mass arbitration clients.

Unfortunately, Keller Postman has gone back on its promises and has reverted to the same strategies that this and other courts have criticized. Keller Postman now contends that the parties' agreement does not apply to approximately 9,000 of those claimants in a transparent effort to drive up Tubi's procedural costs once again and increase leverage. It has also recently filed amended arbitration demands on behalf of its other 15,000 clients asking for relief that, if granted, would prevent Tubi from presenting this Court with information about the rulings in and outcomes of the mass arbitration. Tubi therefore requests a status conference for the Court to consider appropriate relief, including: (a) directing Keller Postman to adhere to the agreement brokered by the Court or (b) lifting the stay so the Court can rule on Keller Postman's motion to dismiss and the parties can proceed with discovery.

Tubi was hopeful that Keller Postman would adhere to the agreement, but was wary because of its experience: As this Court observed, Keller Postman began the dispute with Tubi by filing nearly 24,000 arbitration demands with a legal theory that was "beyond madness." *Id*. at 24:12-15. In doing so, Keller Postman unilaterally ignored the arbitration agreement's requirement that the parties engage in a pre-filing dispute resolution procedure.[1] Even worse,

---

[1] Keller Postman has taken the position that the pre-filing dispute resolution procedure is unconscionable while simultaneously seeking to otherwise enforce the arbitration agreement. The Ninth Circuit rebuffed similar tactics by Keller Postman against another streaming service, stating that a party cannot "simultaneously characterize[ ] as unconscionable the same arbitration

Tubi's data showed that a substantial number of the claims were factually frivolous, yet Keller Postman accused Tubi of "stonewall[ing]" by not identifying the ones it believed were fraudulent. Hr'g. Tr., ECF No. 13 at 46:4-6 (Sept. 4, 2024).  The Court noted, however, that the firm was seeking to "do this on the cheap" by having Tubi "do all the work and pay all the money." *Id.* at 46:7-9.  The firm's conduct did not improve from there.  As the Court saw, Keller Postman acted in "bad faith" on at least two other occasions: (1) by serially disqualifying JAMS arbitrators on behalf of most but not all of its clients, Ex. A at 22:1-23:18, and (2) by suing Tubi and its counsel in California state court for purported ethical violations after Tubi's investigator uncovered additional reasons to be concerned with the claims and the firm's conduct, *id*. at 4:11-19.  Keller Postman's conduct caused this Court to indicate that the firm would need independent counsel going forward.

Still, Tubi agreed with the Court that it would be best to "find . . . a path forward" by narrowing the disputes, limiting the number of fora in which cases were pending, and compromising on the number of arbitrators in the mass arbitration.  *Id*. at 38:5-40:17.

Unfortunately, Keller Postman is at it again.  Weeks after this Court's admonishments, the firm has reverted to its usual "mass-arbitration tactic" that the Ninth Circuit recently criticized for being designed by Keller Postman to "forc[e] [a defendant] to capitulate to a settlement" not on the merits but by causing significant procedural costs.  *Starz*, 129 F.4th at 1183.  Rather than sticking with the 10 consolidated arbitrations, it seeks to add 9,000 more, which breaches the agreement the parties reached.  Tubi therefore requests a status hearing.

---

agreement that the petitioner seeks to enforce." *Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1185 (9th Cir. 2025).

### *The Procedural Agreement Brokered by this Court*

At the outset of the December 19, 2024 hearing, this Court noted that it was troubled by Keller Postman's conduct and it was inclined to allow "open warfare" discovery into Keller Postman's practices: whether it "appropriately solicited clients," whether it took appropriate steps to "assure[] that [its clients] actually had a factual underpinning for [Keller Postman's] arbitrations against [Tubi]," whether the clients "actually ever saw any advertising," and whether Keller Postman "knew about what advertising they saw or didn't see when [it] decide[d] to file claims on their behalf."  Ex. A at 6:2-18.

But then the Court offered another path—a procedural resolution that would allow the mass arbitration to proceed forward.  During a 45-minute recess, and with the Court's guidance, Tubi and Keller Postman reached an agreement on many outstanding issues:

- Tubi and Keller Postman's clients would participate in 10 consolidated arbitrations, rather than the one ordered by JAMS (and desired by Tubi) or the thousands sought by Keller Postman.  Keller Postman further agreed it would not seek to de-consolidate the proceedings.  The final number of claimants would depend on opt-out request rulings by an Illinois state court overseeing a class action settlement.

- Keller Postman would recommend to four clients who were objecting to the Illinois class action settlement to withdraw their objections.  Tubi stated that the objectors' decision to withdraw the objections was "material" to the agreement the parties reached before the Court.

- Keller Postman and its clients would stop moving to disqualify the appointed arbitrators, as they had done six times.

- Tubi would stay its petition in Delaware state court to have an arbitrator appointed. Once JAMS appointed 10 arbitrators, Tubi would withdraw the petition.

- Keller Postman would dismiss the lawsuit it filed against Tubi and Jenner & Block in California state court that this Court said reeked of "of bad faith." Ex. A at 4:8.

- Keller Postman would withdraw a petition to compel arbitration against Tubi in California state court that it filed while the parties were before this Court on December 19.

- Keller Postman would withdraw the disqualification motion it filed against Jenner & Block.[2]

- In the JAMS proceedings, Tubi would be able to use the declarations it obtained from claimants who had withdrawn from the mass arbitration.

- The parties agreed to have this matter stayed pending resolution of the mass arbitration.

***The Withdrawal of the Objections to the Class Settlement in Illinois State Court***

Keller Postman's breach largely relates to its conduct in the Illinois state court case, *Gregory v. Tubi*, Case No. 24-LA-0000209 (Ill. Cir. Ct., Winnebago Cnty., filed Jan. 19, 2024). In that case, Tubi agreed to settle a Video Privacy Protection Act matter on a nationwide class basis with a broad release that included California Unruh Civil Rights Act claims. Keller Postman represented to this Court that it "represent[s] four objectors" (the "Objectors") to the class settlement and would "recommend to them that they immediately stipulate to withdraw their objections." Ex. A at 44:6-10. After Tubi noted the materiality of the withdrawal of the objections and that without them Tubi would likely "be back" before this Court, Keller Postman committed

---

[2] The Court commented that Keller Postman had not presented sufficient facts to justify Jenner & Block's disqualification. Ex. A at 41:6-8 ("[Y]ou're not disqualifying these guys, not in front of me, not based on what I've seen so far.").

6

to "work that out." *Id*. at 44:15-23.  Keller Postman told this Court that, in light of the parties' agreement, it did not "anticipate any proceedings outside of JAMS." *Id*. at 45:20-21.

The Keller Postman and Tubi filed a joint stipulation with the Illinois state court that "the Objectors have agreed to withdraw their Objections" to the class action settlement.  Ex. B, Joint Stip. at 1, *Gregory*, (Dec. 23, 2024)).  The court granted the stipulation on December 26, 2024.  Ex. C, Order, *Gregory* (Dec. 26, 2024)).

### *The Parties Communicate the Agreement to JAMS and Keller Postman submits a "Final List" of 15,016 Claimants*

The same day that the Illinois state court granted the stipulation, Keller Postman wrote to JAMS explaining that, at this Court's suggestion, the parties had agreed on a process to have 10 arbitrators appointed.

> Depending on how the court in *Gregory v. Tubi* rules on the pending requests of claimants to opt-out of the class settlement in that case, the parties expect there to be anywhere between approximately 15,000 and 23,000 claimants.

Ex. D at 10, Email from W. Postman to M. Levington, JAMS (Dec. 26, 2024).

As explicitly stated, the number of claimants was dependent on the Illinois state court's pending ruling on opt out requests.  At the time, the court was considering two categories of opt out requests that did not comply with its preliminary order of approval.  The bulk of the dispute involved approximately 7,600 individuals who did not sign or submit opt out requests.  Instead, **Warren Postman** signed these opt out requests and Keller Postman submitted them ***without its clients' approval***.  Ex. E, Hr'g Tr. at 89:8-21, *Gregory* (Dec. 4, 2024) (W. Postman stating that Keller Postman "signed opt out requests" on behalf of "claimants who didn't respond to us before the deadline")); Ex. F, Sample Attorney-Signed Opt-Out (attached as Exhibit R to affidavit of W. Postman re Reply in Supp. of Pet. to Intervene, *Gregory* (Nov. 12, 2024)).  A few days later, on December 31, 2024, the Illinois state court correctly determined that these opt-out submissions,

7

along with approximately 1,200 others electronically submitted by Keller Postman, were not effective. Ex. G, Order on Pet. to Intervene ¶¶ 6-7, *Gregory* (Dec. 31, 2024).

JAMS agreed to administer the 10 consolidated arbitrations as proposed, with some minor procedural changes. JAMS acknowledged that it would split the "consolidated matter into 10 separate consolidated files with Claimants randomly assigned." Ex. D at 4, Email from M. Levington, JAMS, to Parties (Jan. 10, 2025). Keller Postman responded, "We anticipate a ***final list*** [of claimants] soon and will update you as soon as we have it." Ex. D at 1, Email from W. Postman to M. Levington, JAMS (Jan. 16, 2025) (emphasis added).

In the following weeks, Tubi and Keller Postman negotiated which of the firm's clients submitted valid opt out requests pursuant to final order of approval. To minimize litigation, Tubi ultimately agreed to allow each person Keller Postman claimed to have validly opted out to be included on the final order of approval list. Ex. H, Email from C. Small to W. Postman, et al. (Feb. 4, 2025). On February 7, 2025, Keller Postman submitted to JAMS a list of 15,016 "Claimants for the ten consolidated arbitrations." Ex. I, Email from E. Ames to M. Levington, JAMS (Feb. 7, 2025).

***Keller Postman Initiates an Appeal to Allow it to Object to the Class Action Settlement and Informs Tubi it Seeks to have Thousands of Deconsolidated Arbitrations***

A few weeks later, on February 24, 2025, Keller Postman filed a notice of appeal on behalf of 10 individuals whose opt out forms were found deficient by the court, either because they were signed and submitted by Keller Postman or because they were electronically submitted by Keller Postman. To conserve judicial resources and allow the disbursement of the settlement proceeds to class members,[3] Tubi informed Keller Postman that it would not enforce the settlement release as

---

[3] Some of Keller Postman's claimants are among the class members who filed claims for settlement proceeds.

8

to the 10 appellants and that it would not hold them to the class settlement, thus providing these individuals the relief they sought by virtue of their opt outs. Ex. J, Ltr. from N. Trutanich to W. Postman (Mar. 6, 2025); Ex. K, Ltr. from B. Fox to W. Postman (Mar. 7, 2025). Keller Postman nonetheless refused to dismiss the appeal as moot.

In trying to rationalize why the appeal is not moot, Keller Postman has made its breach and bad faith clear. First, Keller Postman's notice of appeal shows that it is using the 10 appellants as proxies to act as objectors to the settlement—despite agreeing to withdraw all objections. Their notice of appeal requests that the Court "reverse or vacate" both the Final Approval Order and the Preliminary Approval Order, Ex. L, Notice of Appeal at 2, *Gregory* (Feb. 24, 2025), which is functionally the same relief sought by their withdrawn objections. Keller Postman has explained in subsequent correspondence that it plans to argue that the preliminary order of approval was "legally flawed" as "laid out expressly in our *briefing objecting to the restrictions on opt outs in the preliminary approval order*." Ex. M, Ltr. from W. Postman to B. Fox at 1-2 (Mar. 13, 2025) (emphasis added).

That is, Keller Postman wants to revive the *same objections* Keller Postman agreed to withdraw. It wants to do so using 10 individuals who did not object to the settlement in the trial court. And it wants to revive those objections, not just for the 10 appellants who have actually requested relief, but for "thousands of similarly-situated Keller Postman clients." Ex. N, Ltr. from W. Postman to B. Fox at 1 (Mar. 20, 2025) (excluding exhibits). Just like Keller Postman's filing of the California state action against Tubi and its counsel, these latest developments reek of "bad faith." Ex. A at 4:8. And its action flies in the face of the firm's statement to this Court that, once the agreement was implemented, there would be no "proceedings outside of JAMS." *Id*. at 45:20-21.

Even worse, Keller Postman is using the 10 appellants to try to undo the consolidation agreed to by the parties. Keller Postman believes that none of the 9,000 claimants who failed to validly opt out of the class settlement were part of the agreement before this Court. *See generally* Ex. N. Therefore, according to Keller Postman, if the Illinois appellate court were to rule in its favor, the 9,000 individuals would not become part of the 10 consolidated arbitrations. Instead, they would be entitled to 9,000 separate and deconsolidated arbitrations. *Id.*[4]

Therefore, Keller Postman's goal in the appeal is directly flouts the Court's direction that the "destination" of the negotiations would be "five or ten" arbitrations, not "40," or "24,000." Ex. A at 38:11-17.

### *Keller Postman Files Amended Demands on Behalf of 15,012 Claimants*

In addition to its conduct before the Illinois appellate court, on March 13, 2025, Keller Postman filed amended arbitration demands on behalf of the claimants currently in the 10 consolidated arbitrations. Among the changes, the amended demands allege that Tubi breached the arbitration agreement's confidentiality provision by filing the tortious interference complaint against Keller Postman in this Court (where only Keller Postman has publicly named any claimant) and a petition to appoint an arbitrator in Delaware (where the claimants were necessary parties). Ex. O, Sample Am. Demand (Mar. 13, 2025). The amended demands ask for an injunction ordering Tubi to "not share the results of this consolidated arbitration outside of this consolidated arbitration." *Id.* ¶ 101. Accordingly, the relief Keller Postman seeks with this new claim is a brazen attempt to shield itself from the consequences of the meritless proceedings it concocted. If it were to receive this relief, Tubi would be unable to inform the Court of the arbitrators' rulings

---

[4] Keller Postman ironically claims that Tubi's promise to not enforce the release against the ten appellants is insufficient to moot the appeal because Tubi is a "serial contract violator." Ex. M. at 2.

and the final results of the arbitrations. Keller Postman does not want Tubi to inform this Court of the arbitrators' ruling on the enforceability of the informal dispute resolution provision. But that is the very reason this Court initially indicated it might stay the proceedings. In short, Keller Postman is engaged in the same behavior as when it filed the California complaint against Tubi and its counsel seeking to bar Tubi from using the declarations that Tubi's investigator obtained from Keller Postman's former clients.

### *Tubi's Request for a Status Conference*

Given Keller Postman's course of conduct, Tubi requests a status conference for the Court to consider appropriate relief, including: (a) directing Keller Postman to adhere to the agreement brokered by the Court or (b) lifting the stay so the Court can rule on Keller Postman's motion to dismiss and the parties can proceed with discovery.

DATED: March 25, 2025

JENNER & BLOCK LLP

By: /s/ *Brandon Fox*
    Brandon D. Fox (*pro hac vice*)
    bfox@jenner.com
    Kelly M. Morrison (D.C. Bar No. 1046293)
    kmorrison@jenner.com
    Sati Harutyunyan (D.C. Bar No. 1049009)
    sharutyunyan@jenner.com
    515 South Flower Street, Suite 3300
    Los Angeles, CA 90071-2246
    Telephone: (213) 239-5100
    Facsimile: (213) 239-5199

*Attorneys for Plaintiff Tubi, Inc.*

## CERTIFICATE OF CONFERENCE

Pursuant to Rule 7(m), I hereby certify that counsel for Tubi conferred with Keller Postman regarding this request. Keller Postman indicated that it opposes the request on the basis that it is unnecessary and because Keller Postman did not breach the parties' agreement.

DATED: March 25, 2025                                             By: /s/ *Brandon Fox*
                                                                                             Brandon D. Fox