# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TUBI, INC.,

          Plaintiff,

    v.

KELLER POSTMAN LLC,

          Defendant.

Civil Action No. 1:24-cv-01616-ACR

Judge Ana C. Reyes

---

## PLAINTIFF TUBI, INC.'S REPLY IN SUPPORT OF STATUS REPORT AND REQUEST FOR STATUS CONFERENCE

JENNER & BLOCK LLP

Brandon D. Fox (*pro hac vice*)
Kelly M. Morrison (D.C. Bar No. 1046293)
Sati Harutyunyan (D.C. Bar No. 1049009)
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
bfox@jenner.com
kmorrison@jenner.com
sharutyunyan@jenner.com

*Attorneys for Plaintiff Tubi, Inc.*

April 16, 2025

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................................1

ARGUMENT ....................................................................................................................................5

I.   Tubi Gave Up its Right to One Consolidated Arbitration in Exchange for Finality and Certainty. ..............................................................................................................5

II.  The *Dellia* Appeal Circumvents Key Parts of the Settlement: The Objections that Keller Postman's Clients Previously Agreed to Withdraw...................................6

III. In Breaching, Keller Postman Seeks as Many as 9,000 New Proceedings........................11

IV.  Keller Postman Continues to Engage in Gamesmanship and Pursue Litigation Based on Its Own Interests, Rather Than the Interests of Its Clients, As Evidenced by the Fact That It is Claiming Someone Who Died is Making Decisions. ....................13

V.   This Court Brokered the Agreement and Should Determine Whether Keller Postman Breached It. ...........................................................................................16

VI.  Keller Postman Does Not Dispute That It Is Seeking Relief in Arbitration That Would Preclude Tubi from Providing This Court with Information Relevant to Determining Keller Postman's Liability for Tortious Interference. .................................16

VII. In Lifting the Stay, the Court Should Allow Tubi to File the Amended Complaint, Deny Keller Postman's Motion to Dismiss, and Schedule the Rule 26(f) Conference. ...........................................................................................................17

CONCLUSION.................................................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dellia v. Gregory*, No. 4-25-0181 (Ill. App. Ct., 4th Dist.) .................................................... *passim*

*\*Duniver v. Clark Material Handling Co.*,
  2023 IL 128141 .......................................................................................................................14

*\*Geddes v. Mill Creek Country Club, Inc.*,
  196 Ill. 2d 302 (2001) .............................................................................................................14

*Gregory v. Tubi*,
  No. 24-LA-0000209 (Ill. Cir. Ct., Winnebago Cnty.), *appeal filed sub nom.*
  *Dellia v. Gregory*, No. 4-25-0181 (Ill. App. Ct., 4th Dist.) ............................................ *passim*

*\*Jones v. Starz Ent., LLC*,
  129 F.4th 1176 (9th Cir. 2025) ...............................................................................................13

*\*Matthews v. Chicago Transit Authority*,
  2016 IL 117638 .......................................................................................................................15

*\*Mortimer v. River Oaks Toyota, Inc.*,
  663 N.E.2d 113 (Ill. App. 1st Dist. 1996) .......................................................................8, 9, 10

*\*Olden v. Lafarge Corp.*,
  472 F. Supp. 2d 922 (E.D. Mich. 2007) ...................................................................................8

*\*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ..................................................................................................................7

*Robison v. Orthotic & Prosthetic Lab, Inc.*,
  2015 IL App (5th) 140079 .......................................................................................................14

*\*Rosen v. Ingersoll-Rand Co.*,
  865 N.E.2d 451 (Ill. App. 1st Dist. 2007) .................................................................................8

**Other Authorities**

D.C. Rule Pro. Conduct 1.2(a) ......................................................................................................18

D.C. Rule Pro. Conduct 1.4(b) ......................................................................................................18

D.C. Rule Pro. Conduct 3.1, Comment [2] ...................................................................................18

**INDEX OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| A | Keller Postman's Objection to Tubi, Inc.'s Motion to Dismiss Appeal, *Dellia v. Gregory*, No. 4-25-0181 (Ill. App. Ct., 4th Dist., Apr. 9, 2025) |
| B | Preliminary Approval Order, *Gregory v. Tubi*, No. 24-LA-0000209 (Ill. Cir. Ct., Winnebago Cnty., Aug. 26, 2024). |
| C | Keller Postman (@KellerPostman), Twitter (Mar. 25, 2025, 1:27 p.m.) |

**INTRODUCTION**

To streamline multiple litigations and create order, the Court brokered a deal in which Tubi agreed to forgo the one consolidated arbitration that JAMS ordered. Instead, the parties agreed to proceed with ten consolidated arbitrations and Keller Postman promised to withdraw objections to a class settlement in Illinois state court. As evident from Keller Postman's own response to Tubi's status report, it has breached that deal. That breach threatens the agreed number of consolidated arbitrations and the finality of the class settlement.

In much of its response, Keller Postman takes a measured tone to create an illusion of reasonableness. The firm wants this Court to believe that it was consistent with the parties' agreement for Keller Postman to resurrect objections to the Illinois class settlement and do so on behalf of clients who never filed them, even though *only* objectors have standing to challenge a class settlement on appeal. And Keller Postman wants this Court to think that Tubi should have foreseen Keller Postman's bait-and-switch: that after expressly agreeing to ***withdraw the only four timely objections*** to the class settlement, it would later use ten different clients who did not object to make the ***very same arguments it had just withdrawn***—despite having already received Tubi's significant compromise of ten consolidated arbitrations instead of one. It wants the Court to believe that Tubi cannot be prejudiced by Keller Postman's actions because, "at most" Tubi would be looking at an eleventh arbitration if the appeal is successful. But the firm's representations to this Court differ significantly—in substance and tone—from its statements to Tubi and in other fora. When the Court is not the audience, Keller Postman has been blunt in describing how it flouted the terms the parties agreed to before this Court, and how it plans to use that breach to increase litigation costs, including raising the specter of nearly 9,000 new unconsolidated arbitrations.

1

Keller Postman breached the agreement by using ten clients—who had not objected—to challenge the validity of the Illinois class settlement on appeal in *Gregory v. Tubi*, No. 24-LA-0000209 (Ill. Cir. Ct., Winnebago Cnty.), *appeal filed sub nom. Dellia v. Gregory*, No. 4-25-0181 (Ill. App. Ct., 4th Dist.) (the "*Dellia* appeal").  As part of its bargain before this Court, Keller Postman agreed to withdraw all existing objections to that settlement.  But within weeks of it exiting this courthouse's doors, Keller Postman initiated an appeal on behalf of ten clients who had *not* objected to the Illinois class settlement in *Gregory*.  Using these ten clients, Keller Postman said in writing that it seeks to unwind the entire *Gregory* settlement, upend the finality of that settlement to a class of tens of millions of Tubi users, and cause there to be as many as 9,000 additional arbitrations before JAMS.

Keller Postman launched this appeal notwithstanding: (a) agreeing, as part of the bargain, to withdraw the only four objections that existed in *Gregory*; (b) the deadline of October 31, 2024 for filing objections having expired when Keller Postman agreed to withdraw the four objections on December 19, 2024; (c) Keller Postman not disputing that it filed only opt-outs—rather than objections—in the *Gregory* trial court on behalf of the ten clients; (d) Keller Postman admitting that its opt-out filings on behalf of the ten clients did not comply with the *Gregory* court's ordered procedures; (e) Tubi affording the ten clients the exact relief they would have been entitled to receive had they opted out appropriately (as Tubi agreed to do before this Court with Keller Postman's four valid objectors); and (f) Keller Postman acknowledging to the Court[1] and to

---

[1] Hr'g. Tr. at 45:10-14 ("Dec. 19, 2024 Hr'g. Tr."), ECF No. 29 (Dec. 19, 2024) ("[O]nce we get ten arbitrators [ ] we will randomly assign all of the Keller Postman arbitration claimants who have validly opted out of the class per the Court's, you know, determination to the ten [arbitrators], so that would be a resolution – as a way to bring a resolution.")

JAMS[2] that the number of arbitration claimants to be allocated among the ten consolidated arbitrations was dependent on the *Gregory* court's then-pending ruling on opt-out requests.

It is irrelevant that the agreement before this Court did not specifically require Keller Postman clients to waive their "appellate rights." Resp. to Status Rpt. & Req. for Conf. ("Response") at 2, ECF No. 31. It is black letter Illinois law that only individuals who timely objected to a class settlement in the trial court—and complied with that court's order setting forth the procedures—may pursue an appeal. Keller Postman agreed before this Court to withdraw those objections. As a result, none of its clients has "appellate rights" that allow them to object to the settlement on appeal, including the ten appellants in the *Dellia* appeal. To be clear, Tubi believes this appeal to be frivolous. But Keller Postman is pursuing the *Dellia* appeal as an end run around precisely what it bargained away and Tubi bargained for in front of this Court.

This appeal is not about the ten appellants. It is about Keller Postman. There can be no better evidence that the firm is making decisions without obtaining the informed consent of its clients than this: Tubi's counsel transmitted a letter to Keller Postman on March 7, 2025, allowing the *Dellia* appellants not to be bound by the Illinois judgment and providing them with the opportunity to pursue their claims in the ten consolidated arbitrations. Keller Postman responded that "***the appellants*** rejected the offer" and argued that their rejection kept the appeal alive. Response at 13 (emphasis added). But ***before*** Tubi's counsel transmitted the letter to Keller Postman, the lead appellant, Samantha Dellia, ***died*** in a tragic fire. She had no opportunity to reject

---

[2] Response at 15; Status Rpt., Ex. D, at 11, ECF No. 28-4 ("Depending on how the court in *Gregory v. Tubi* rules on the pending requests of claimants to opt-out of the class settlement in that case, the parties expect there to be anywhere between approximately 15,000 and 23,000 claimants.").

the "offer" before her death. By pretending that Ms. Dellia chose to "reject[] the offer," Keller Postman has once again made misrepresentations to the Court.[3]

It makes little sense for any of the appellants to reject the relief Tubi promised them, as the ten appellants cannot obtain anything more for themselves than what Tubi promised. By continuing to litigate the appeal, however, the appellants risk being bound to a class settlement from which they purportedly sought to opt out (the very relief that Tubi has represented it would provide to them). And in the case of Ms. Dellia, the contradiction is even more striking—she is appealing the Illinois judgment while also having submitted a claim to receive payment from the very class settlement she is now purportedly challenging after her death.

Separately, the Court should lift the stay because Keller Postman has filed 15,000 amended demands that undermine the Court's very reasons for staying the case. The Court issued the stay because it wanted to learn how the arbitrators ruled on the enforceability of the informal dispute resolution process and merits of the claims. But Keller Postman now seeks to have those rulings kept secret, even from this Court. The firm does not deny this.

Ultimately, Keller Postman's comparison of the situation to baseball is telling. This is all a part of a game Keller Postman is playing at the expense of its own clients, Tubi, and multiple

---

[3] Similarly, in its motion to dismiss Tubi's complaint, Keller Postman asserted that: (1) its "***clients each*** understood that they were subject to the JAMS arbitration agreement in Tubi's Terms," Mot. to Dismiss or Stay at 17, ECF No. 14-1; (2) its "***clients*** took the position that [the informal dispute resolution provision] was unconscionable and unenforceable," *id*. at 18; and (3) "Keller Postman advised clients to file claims without delay—the act Tubi asserts to be a breach," *id.* at 29 (emphasis added throughout). But when Tubi interviewed 19 former claimants, ***not one*** stated that they agreed to file the claim knowing about the informal dispute resolution process. Mot to Disqualify, Ex. 1 ¶ 7(c), ECF No. 23-2 (Decl. of Stephanie Talamantez, *Gregory*). Keller Postman is using the attorney-client privilege as a sword and shield to allow it to make misrepresentations with impunity.

courts (here and in Illinois).  The Court should lift the stay, rule on the motion to dismiss, and allow Keller Postman's game to be played out in the open.

## ARGUMENT

Keller Postman does not dispute that it is using the *Dellia* appeal to try to unwind the entire Illinois class settlement.  It does not dispute that as of December 19, 2024 (the hearing date before this Court), it had filed objections to that settlement on behalf of only four clients.  Nor does it dispute that, by that date, the deadline for such objections had long since passed.  It also does not dispute that the arguments it pursues on appeal—on behalf of ten different clients who never objected—are the same arguments it raised, and then expressly withdrew, as a material part of the broad procedural agreement reached before this Court that included a stay of this litigation.  And it does not dispute that it is pursuing those arguments via the *Dellia* appeal to reopen the class settlement for approximately 9,000 of its clients whose claims were resolved by the final judgment in *Gregory* and who chose not to pursue their own appeal.

Keller Postman's primary justification—that Tubi did not extract an express, on-the-record waiver of appellate rights in the Illinois class settlement—is another sleight of hand.  Response at 5-6.  The agreement did not need to spell out that only proper objectors could appeal because Illinois law and the *Gregory* court's order already drew that line.  Keller Postman's Response misstates the agreement, ignores the fact that its clients have no basis to assert the issues they raise on appeal, and disregards its gamesmanship.

## I.    Tubi Gave Up its Right to One Consolidated Arbitration in Exchange for Finality and Certainty.

Tubi entered the December 19, 2024 status hearing having consolidated all 24,000 of Keller Postman's clients' claims into a single arbitration—minimizing Tubi's procedural costs.  The parties began negotiations understanding that the Court believed there should be between five to

ten consolidated arbitrations.  Dec. 19, 2024 Hr'g. Tr. at 38:16-17.  Tubi agreed to expand upwards

to ten because the deal provided Tubi with finality over the Illinois class settlement, prevented

Keller Postman from serially disqualifying every arbitrator appointed to oversee the arbitrations,

and put a stop to its efforts to deconsolidate the arbitration (which would have caused vastly

increased procedural costs).  Coming out of the December 19, 2024 hearing, Tubi had the

reasonable understanding that it traded efficiency for closure.  It would absorb the cost (and risk)

of ten consolidated arbitrations, and in return, Keller Postman would abandon its efforts to inflict

exorbitant procedural costs on Tubi, which were part of its scheme to prevent Tubi from defending

itself on the merits.

## II.    The *Dellia* Appeal Circumvents Key Parts of the Settlement: The Objections that Keller Postman's Clients Previously Agreed to Withdraw.

Keller Postman's appeal in *Dellia* is a transparent attempt to circumvent its agreement to

stop pursuing objections to the *Gregory* settlement in Illinois state court.  As Tubi explicitly stated

to the Court at the time the parties reached the procedural agreement, the withdrawal of the

objections to the *Gregory* settlement was a material part of the deal Tubi reached with Keller

Postman.  Dec. 19, 2024 Hr'g. Tr. at 44:15-16.  Tubi said that the parties would "be back" before

the Court if the objections were not withdrawn.  *Id.*  By advancing those same objections on appeal

using different proxies, Keller Postman has violated the parties' agreement.  That Keller Postman

does so by using appellants with no grounds to litigate those objections makes its conduct all the

more egregious.

Keller Postman tries to downplay the overlap between the arguments asserted by the four

objectors and those raised by the ten appellants by saying the former raised "fairness" objections,

*see, e.g.*, Response at 1, 12, as if the untimely objections on appeal from other proxies were

somehow different.  But Keller Postman is repackaging the ***exact same*** arguments in the four

*Gregory* objections that it now presses on behalf of the ten appellants in *Dellia*.  Among other issues, Keller Postman argued on behalf of the four objectors in *Gregory* that the trial court did not have "personal jurisdiction" over Keller Postman's clients because they had purportedly received insufficient notice of the settlement; they also argued that the Illinois trial court could not bind Keller Postman's absent class members because they were California residents and had valid claims under California's Unruh Civil Rights Act, which was not true of the class representative. Objs. to Settlement Agreement at 2-3, *Gregory* (Oct. 31, 2024).  Now, in the *Dellia* appeal, Keller Postman parrots identical claims: that the *Gregory* court's "assertion of personal jurisdiction over absent out-of-state class members like Appellants" did not "comport with due process" Ex. A, Obj. to Mot. to Dismiss, *Dellia*, at 1.  And despite attempting to convey to the Court that the issues are different, Keller Postman has admitted they are the same in correspondence with Tubi:  Keller Postman told Tubi that the arguments in the *Dellia* appeal "were laid out expressly in our briefing objecting to the restrictions on opt outs in the preliminary approval order."  Response at 2.  That is, Keller Postman is now pursuing waived and untimely objections that "were laid out expressly" in the objections of four different clients, which it agreed to withdraw as part of the procedural agreement before this Court.

In other words, Keller Postman's purported basis for the appeal—disputing the court's "personal jurisdiction" over the appellants—is a thinly disguised attempt to resurrect the arguments against the settlement it bargained away when it agreed to withdraw the four objections. As Keller Postman well knows, "personal jurisdiction" over an absent class member in the class settlement context simply requires "notice plus an opportunity to be heard and participate in the litigation … [or] to remove himself from the class."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).  To object to "personal jurisdiction" in the class settlement context, an absent

class member must attack the settlement's notice and opt-out procedures.  The vehicle for raising

such arguments is a properly filed objection to the settlement, not an exclusion request; indeed, a

class member who seeks exclusion *cannot* also object.  *See Rosen v. Ingersoll-Rand Co.*, 865

N.E.2d 451, 457 (Ill. App. 1st Dist. 2007) (holding that appellants were barred from challenging

due process and fairness of settlement where they did not comply exactly with the procedures for

objecting set forth in the settlement notice); *Mortimer v. River Oaks Toyota, Inc.*, 663 N.E.2d 113,

117 (Ill. App. 1st Dist. 1996) (opting out and objecting are mutually exclusive under Illinois law);

*Olden v. Lafarge Corp.*, 472 F. Supp. 2d 922, 930 (E.D. Mich. 2007) ("[O]pting out of a settlement

and choosing to object logically are mutually exclusive options: if one actually opts out, she has

no standing to object to the settlement as she will not be bound by it").

In accordance with due process and Illinois law, the *Gregory* court established a procedure

and deadline for objecting to the class settlement agreement.  Ex. B, *Gregory* Preliminary Approval

Order ¶ 14.  Class members had to file their objections by no later than October 31, 2024—that is,

more than a month and a half before the December 19, 2024 status hearing before this Court.  Ex.

B, *Gregory* Preliminary Approval Order ¶ 14.  The objections had to be "personally signed by the

objector" and include certain information, including the specific grounds for the objection.  Ex. B,

*Gregory* Preliminary Approval ¶ 14.  Keller Postman, of course, understood these requirements,

as it filed objections to the settlement in the name of four (and only four) of its clients.

The *Gregory* court established a separate procedure for individuals to request to be

excluded from the settlement class, including making the request in writing, personally signing the

request, and sending it directly to the settlement administrator by October 31, 2024 (the same day

the objections were due).  Ex. B, *Gregory* Preliminary Approval Order ¶ 12.  People who asked to

be excluded from the settlement class could not also object to the settlement agreement: Under

both the settlement agreement and Illinois law, objecting to the settlement and requesting exclusion from the class were mutually exclusive. Ex. B, *Gregory* Preliminary Approval Order ¶ 14; *see also Mortimer*, 663 N.E.2d at 117 (Ill. App. 1st Dist. 1996) (rejecting attempt to both opt out and object).

At the time the parties reached the agreement before this Court on December 19, 2024, the deadlines for objecting to the settlement and requesting exclusion from the settlement had both passed. Only four people—each represented by Keller Postman—objected to the settlement agreement. The ten appellants were not among the four objectors. They followed none of the procedures required to raise an objection to the settlement. Nor did any of the ten attempt to challenge the trial court's opt-out procedures. Instead, Keller Postman attempted to exclude them from the class but did not comply with the trial court's most basic requirements for doing so.   In fact, for five of the ten appellants, Keller Postman signed the opt-out requests without obtaining their authorization. Status Rpt., Ex. E, at 89:8-21, ECF No. 28-5 (*Gregory* Hr'g. Tr.) (W. Postman stating that Keller Postman "signed opt out requests" for approximately 7,600 "claimants who didn't respond to us before the deadline"); Status Rpt., Ex. F, ECF No. 28-6 (Sample Attorney-Signed Opt-Out). The trial court properly rejected these lawyer-generated opt-out requests and held the claimants/appellants bound by the trial court's judgment.

In defending its latest maneuver to challenge the entire class settlement through an appeal by those ten appellants, Keller Postman claims the parties did not expressly put in their colloquy with the Court that any failed opt-out could act as an objector to the class settlement. Only the most cynical of counsel would preemptively demand that Keller Postman refrain from using failed opt-outs to improperly raise objections for the first time on appeal to undo the *Gregory* court's final order of approval. Response at 5-6. Keller Postman's argument underscores the firm's

gamesmanship, ignores the covenant of good faith, and mischaracterizes the agreement before this Court. Tubi expressly negotiated for—and Keller Postman expressly agreed to—the withdrawal of all the objections Keller Postman's clients had made and could lawfully and properly assert. It would have been nonsensical for Tubi to seek Keller Postman's agreement not to improperly use absent class members who had never submitted objections in the trial court in the first place as vehicles to challenge the settlement on appeal. The terms of the settlement agreement, the Illinois court's Preliminary Approval Order, and Illinois law already preclude that conduct. Ex. B, *Gregory* Preliminary Approval Order ¶ 14; *Mortimer*, 663 N.E.2d at 117 (Ill. App. 1st Dist. 1996). It would be akin to expressly requiring Keller Postman to agree that it would not attempt to appeal on behalf on the objectors who had just withdrawn their objections.

Keller Postman's position that it is not in breach rests on the deeply flawed assumption that the "accepted" opt-outs were part of the Court-brokered agreement while any future "rejected" opt-outs fell outside its scope. But that is an artificial distinction that was never even suggested at the December 19 hearing, and it is not what the parties agreed to. Neither the record, extrinsic evidence, nor parol evidence supports it. In fact, the parties agreed that those claimants whose opt-outs the *Gregory* court accepted would have their claims adjudicated through ten consolidated arbitrations, while—as a result of the withdrawn objections—those claimants whose opt-outs the Illinois trial court rejected would have their arbitration claims released through the *Gregory* settlement. Mr. Postman himself said it to this Court:

> [O]nce we get ten arbitrators [ ] we will randomly assign all of the Keller Postman arbitration claimants who have validly opted out of the class per the Court's, you know, determination to the ten, so that would bring a resolution—as a way to bring a resolution.

Dec. 19, 2024 Hr'g. Tr. at 45:10-14.

He later described the deal in a similar fashion to JAMS:

> Depending on how the court in *Gregory v. Tubi* rules on the pending
> requests of claimants to opt-out of the class settlement in that case,
> the parties expect there to be anywhere between approximately
> 15,000 and 23,000 claimants.

Status Rpt., Ex. D, at 10, ECF No. 28-4 (Dec. 26, 2024 Email from W. Postman to M. Levington, JAMS).

With no remaining objections, the Illinois trial court's final order of approval in *Gregory* would be that: **final**.  As Mr. Postman stated, it would bring "resolution" of the Illinois class action and therefore the number of claimants.  Mr. Postman confirmed this later by telling the Court that "we don't anticipate any proceedings outside of JAMS."  Dec. 19, 2024 Hr'g. Tr. at 45:20-21.

Keller Postman purported to represent the interests of all of these claimants at the time of the deal.  Nothing gave Tubi notice that Keller Postman was or would be scheming to render the withdrawal of those objections meaningless.  By using the ten appellants to try to undo the Illinois class settlement—a right it bargained away before this Court as a condition of staying this action and securing Tubi's agreement to ten arbitrators rather than just one—Keller Postman is not zealously advocating for its clients by exploiting a loophole.  None exists.  The truth is much simpler:  It is breaching the agreement.

## III.    In Breaching, Keller Postman Seeks as Many as 9,000 New Proceedings.

Keller Postman claims that Tubi will not be prejudiced by added procedural costs because "at most" there would be one consolidated arbitration involving 9,000 individuals if the firm is successful on appeal.  Response at 3.  Contrary to what Keller Postman is now telling this Court, the firm has been clear that it intends to argue for 9,000 "truly individual arbitrations."  Convinced that it has pulled off one bait-and-switch under this Court's supervision, Keller Postman is trying to lay the foundation for another.

Keller Postman says that "the potential practical impact of [its] position is quite modest" because even if the appeal is successful, JAMS's previous decisions show that this would "result in an eleventh consolidated arbitration at JAMS commencing at some point in the future." Response at 21 & n.5. Putting aside that the parties agreed to *ten* consolidated arbitrations and no more, Keller Postman's assurances about the practical impact of the appeal are cold comfort. Notably, Keller Postman merely says what JAMS is ***likely*** to do in the event that the appeal results in 9,000 additional arbitration claims; Keller Postman does not say it will ***agree*** that those claims should be consolidated or that Tubi should pay only one additional case initiation fee and commencement fee. Indeed, Keller Postman's statement to this Court is a stark about-face from the position it took in a letter to Tubi about the *Dellia* appeal. In that letter, Keller Postman stated that "neither the Appellants nor the thousands of similarly-situated Keller Postman clients forced into the *Gregory* settlement are required to join the consolidated proceeding and to waive their argument that they are entitled to truly individual arbitrations." Status Rpt., Ex. N, at 2, ECF No. 28-14. In other words, Keller Postman does ***not*** agree to a consolidated proceeding for these 9,000 individuals and plans to seek "truly individual" arbitrations if its appeal is successful.

Notably, in its response, Keller Postman also does not agree to refrain from invoking California law to serially disqualify arbitrators, despite reaching such an agreement with Tubi with respect to the ten consolidated arbitrations in December. Accordingly, despite Keller Postman's assertions to this Court, it is clear that Keller Postman intends to try to use the *Dellia* appeal not just to have an eleventh arbitration but also to play its mass arbitration game whereby it uses the threat of exorbitant arbitration fees to extort a settlement.

Keller Postman's position that approximately 9,000 individuals are entitled to non-consolidated proceedings in front of different arbitrators is consistent with its repeated attempts to

unwind JAMS's consolidation order and grind the arbitration to a complete halt.  In its response, Keller Postman blames *Tubi* for not "proceeding with the consolidated arbitration" and claims Tubi has manufactured the instant dispute before the Court.  Response at 9.  It argues Tubi had the power to file a motion to dismiss in front of the one arbitrator that would have been appointed after JAMS consolidated the proceedings into a single arbitration in May 2024.  But in front of JAMS, Keller Postman serially disqualified ***every*** arbitrator JAMS tried to appoint and, as recently as October 2024, filed a motion demanding that JAMS "promptly deconsolidate [Claimants'] arbitrations."  Keller Postman prevented Tubi from filing such a motion.

Indeed, Keller Postman blames Tubi for filing a petition to appoint an arbitrator, Response at 21, even though Keller Postman expressly told this Court it would continue to disqualify every arbitrator appointed, Hr'g. Tr. at 14:4-15, ECF No. 13 (Sept. 4, 2024).  Despite the statements it makes now to this Court, Keller Postman has given every indication that it will revert to its typical scheme, with its "true motivation … geared more toward racking up procedural costs" to force Tubi "to capitulate to a settlement than proving the allegations … and seek[ing] appropriate redress on the merits," as the Ninth Circuit recently recognized.  *Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1183 (9th Cir. 2025).  Its latest maneuver of filing ten appeals on behalf of non-objectors and seeking relief for 9,000 other absent class members who chose not to file their own appeal is another attempted end-run around JAMS's consolidation order and the parties' agreement before this Court.

## IV.  Keller Postman Continues to Engage in Gamesmanship and Pursue Litigation Based on Its Own Interests, Rather Than the Interests of Its Clients, As Evidenced by the Fact That It is Claiming Someone Who Died is Making Decisions.

Keller Postman's actions after Ms. Dellia's tragic death is consistent with the allegations in Tubi's complaint: Keller Postman's business model is predicated on Keller Postman making

decisions on behalf of its clients for its own self-interest, all while purporting to act based on their guidance and hiding behind claims of privilege. Indeed, the circumstances with all appellants underscore that Keller Postman has simply disregarded the interests of its individual clients to further Keller Postman's modus operandi of driving up its targets' procedural costs.

Ms. Dellia passed away in a fire on March 3, 2025. Four days later, Tubi's counsel transmitted a letter to Keller Postman, relieving the *Dellia* appellants from the judgment in *Gregory* and allowing them to be part of the consolidated arbitration group. But although this assurance gave the ten appellants the relief they sought in the trial court, Keller Postman refused to dismiss the *Dellia* appeal as moot. Status Rpt., Ex. N, ECF No. 28-14. Keller Postman brazenly told the Court that "***the appellants*** rejected the offer." Response at 13 (emphasis added). But Ms. Dellia died before Tubi transmitted the letter to Keller Postman. She had no opportunity to reject the "offer" before her death. By pretending that Ms. Dellia chose to "reject[] the offer," Keller Postman has once again made misrepresentations to the Court.[4] There can be no better evidence that the appeal is being driven by Keller Postman's interests, rather than by the appellants.

Further, Keller Postman is incorrect that Tubi's commitment to the appellants is "nonbinding." Ex. A, *Dellia* Obj. to Mot. to Dismiss at 16. If appellants dismiss their appeal or the appellate court finds the appeal to be moot based on the letter, Tubi will be estopped from attempting to hold the ten appellants to the settlement release in any future proceedings. *Duniver v. Clark Material Handling Co.*, 2023 IL 128141, ¶ 22 (judicial estoppel precludes a party from taking contradictory positions in separate proceedings based on changed circumstances); *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001) (a party cannot assert rights where

---

[4] Under Illinois law, an attorney's authority is revoked by the death of a client. *See, e.g., Robison v. Orthotic & Prosthetic Lab, Inc*., 2015 IL App (5th) 140079, ¶ 12.

opposing party "in good faith[ ] relied upon [the other's] conduct and has been thereby led to change his or her position for the worse."). Keller Postman contends that Tubi's assurance has no legal effect because Tubi purportedly made a "gratuitous promise given without any consideration." Ex. A at 18. But consideration is an element of contract formation, while estoppel requires no consideration. *See Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 91.

In light of Tubi's promise, it cannot be in the interest of any appellant to maintain an appeal in the face of Tubi's offer. If the appeal is successful, the appellant will obtain the exact same relief Tubi has agreed to provide—exclusion from the judgment and the ability to proceed in arbitration—but not for many months (or perhaps years). And if the appeal is unsuccessful, appellants may be bound by the judgment they now seek to escape. In other words, pursuing the appeal instead of proceeding immediately in arbitration has only downside for each appellant. The only potential beneficiaries of the appeal are *other* Keller Postman clients who likewise failed to comply with the opt-out procedures but did *not* appeal. Keller Postman cannot pursue no-win appeals on behalf of some clients solely for the purpose of resurrecting the claims of *other* clients. *See* D.C. Rule of Pro. Conduct 1.7(c) (if there is conflict between two clients, a lawyer must obtain the informed consent of "[e]ach potentially affected client … after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation.")

Keller Postman's response contains stunning proof that the appeal is about Keller Postman's rather than its clients' interests. It is seeking relief that a vast majority of those individuals *do not want*. As Keller Postman's response asserts:

> Keller Postman informed those clients who had their opt-out request rejected of the *Gregory* Court's decision and their right to appeal it. Out of 8,690 Rejected Opt Outs, ten appealed.

Response at 16.  In other words, all but ten of those who failed to submit valid opt-outs were instructed of their (erroneous) "right to appeal" and chose not to appeal.  They have shown no interest in challenging the denial of the opt-out requests Keller Postman filed in their names.  Keller Postman has made these individuals part of the appeal, but they do not want to be part of it.  The only explanation for Keller Postman's conduct is that it is attempting to use these individuals to drive up Tubi's costs to exert settlement pressure.

**V.    This Court Brokered the Agreement and Should Determine Whether Keller Postman Breached It.**

Keller Postman asks this Court to ignore its conduct, arguing that "disputes about compliance with" the parties' agreement before this Court "must be resolved in arbitration, not this Court."  Response at 18.  But the parties never agreed that the December 19 agreement—brokered by the Court—would be subject to Tubi's Terms of Use.  Nor would that make sense.  Keller Postman is not a party to the Terms of Use.  There is no arbitration agreement between Keller Postman and Tubi.  Keller Postman breached the agreement brokered by the Court, negotiated in the Court's jury room, and described by the parties on the record before the Court.  Additionally, the Court stayed the case based on that agreement.  This Court is the proper forum for addressing Keller Postman's breach.

**VI.    Keller Postman Does Not Dispute That It Is Seeking Relief in Arbitration That Would Preclude Tubi from Providing This Court with Information Relevant to Determining Keller Postman's Liability for Tortious Interference.**

The Court should lift the stay because Keller Postman is undermining the Court's very reasons for issuing one.  The Court told the parties that it thought a stay was appropriate so that it could wait to see how the arbitrators ruled on the enforceability of the informal dispute resolution procedures Keller Postman caused its clients to breach.  Dec. 19, 2024 Hr'g. Tr. at 16:23-17:4.

The Court also wanted to see how the arbitrators ruled on Keller Postman's frivolous claims. *Id.* at 11:6-9.

Since that time, Keller Postman has filed amended demands on behalf of all remaining claimants that seek to keep this information from this Court. In the amended demands, Keller Postman seeks injunctions that would prevent Tubi from providing any information to this Court about the arbitrations and the arbitrators' rulings. Status Rpt., Ex. O, ECF No. 28-15 (Sample Am. Demand). Keller Postman does not deny that it is seeking to prevent Tubi from sharing with this Court the very information that this Court has said would be relevant to its resolution of Tubi's tortious interference claim. Because the reasons the Court issued the stay are no longer valid, the Court should lift the stay, rule on the motion to dismiss, and allow the parties to proceed to discovery.

## VII. In Lifting the Stay, the Court Should Allow Tubi to File the Amended Complaint, Deny Keller Postman's Motion to Dismiss, and Schedule the Rule 26(f) Conference.[5]

The Court indicated on December 19 that it would allow Tubi to amend the complaint once it lifts the stay. Dec. 19, 2024 Hr'g. Tr. at 46:4-6 ("I'm going to grant it if we come live."). And although the Court understandably indicated it does not like companies filing lawsuits against plaintiffs' lawyers, it recognized Tubi has "a lot of compelling evidence" concerning Keller Postman's tortious interference. *Id.* at 36:12-13. Tubi's allegations and evidence show that Keller Postman filed nearly 24,000 arbitration demands in April 2024 without complying with the informal dispute resolution process mandated by Tubi's Terms of Use, and that it did so without informing its clients of that requirement. Tubi interviewed 19 individuals who withdrew their

---

[5] The Court stated that Keller Postman "would probably need independent counsel at this point if we move forward." Dec. 19, 2024 Hr'g. Tr. at 25:8-10.

claims. Each confirmed that they did not consent to file the arbitration demands without going through the mandatory informal dispute process. The amended complaint also alleges that Keller Postman frivolously brought the claims on behalf of thousands of people who were not registered Tubi users, had never watched Tubi advertising, or at least had not watched Tubi advertising during the Unruh Act's two-year statute of limitations.

Keller Postman objected to Tubi's filing of the amended complaint, saying that the allegations would be futile. Opp'n to Mot. for Leave to Amend at 15, ECF No. 24. The Court disagreed, saying it would allow Tubi to file the amended complaint. Dec. 19, 2024 Hr'g. Tr. at 46:4-6. And Ms. Dellia's death is more evidence that Keller Postman does not obtain the informed consent of its clients before making important decisions. D.C. Rule 1.2(a) ("a lawyer shall abide by a client's decisions concerning the objectives of representation," "shall consult with the client as to the means by which they are to be pursued," and "shall abide by a client's decision whether to accept an offer of settlement."); D.C. Rule 1.4(b) (a lawyer must "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."). Her death also shows that Keller Postman does not know basic facts about its clients or their claims.[6] D.C. Rule 3.1, cmt [2] (lawyers must "inform themselves about the facts of their clients' cases.")

---

[6] Keller Postman's lone argument about changed circumstances is particularly ironic. It told the Court that "[i]n the several months since the status conference, the importance of bright-line immunity for law firms representing disfavored clients against powerful interests has only become clearer." Response at 10. This is disingenuous, to say the least, from a firm that responded to the Executive Order against Jenner & Block by arguing that Jenner's litigation positions in this very case should be disregarded because Jenner is "a liberal law firm that was just sanctioned by President Trump" and that such "leftist lawyers" are less credible than "principled and committed conservatives" like "Keller Postman." Ex. C., Keller Postman (@KellerPostman), Twitter (Mar. 25, 2025, 1:27 p.m.).

Tubi's allegations in its original and amended complaint are more than plausible, and the law does not allow Keller Postman to enjoy the benefit of the doubt at the motion to dismiss stage. Tubi respectfully asks the Court to deny the motion to dismiss, grant Tubi leave to file the amended complaint, and order Keller Postman to answer the amended complaint.

## CONCLUSION

Keller Postman has breached the agreement the parties reached on December 19, 2024, before this Court.  It has caused Tubi damage and will continue to do so.  The Court should lift the stay, deny Keller Postman's motion to dismiss, grant Tubi leave to amend the complaint, order Keller Postman to respond to the amended complaint, schedule the Rule 26(f) conference, and allow the case to proceed to discovery.

DATED: April 16, 2025                                    JENNER & BLOCK LLP

By: /s/ *Brandon Fox*
    Brandon D. Fox (*pro hac vice*)
    bfox@jenner.com
    Kelly M. Morrison (D.C. Bar No. 1046293)
    kmorrison@jenner.com
    Sati Harutyunyan (D.C. Bar No. 1049009)
    sharutyunyan@jenner.com
    515 South Flower Street, Suite 3300
    Los Angeles, CA 90071-2246
    Telephone: (213) 239-5100
    Facsimile: (213) 239-5199

    *Attorneys for Plaintiff Tubi, Inc.*